[No. 731-3.   Division Three.   July 10, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. ZADIE CRUDUP, *Appellant.*

584

*Crane Bergdahl* (of *Leavy, Taber, Schultz & Bergdahl*), for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Carl L. Johnson, Deputy,* for respondent.

McINTURFF, J.—Defendant was charged with second-degree murder in connection with the shooting death of her husband John Crudup. She appeals from a verdict of guilty of the crime of manslaughter.

John Crudup was killed by a single bullet to the head on October 29, 1971. Defendant claimed decedent had produced a gun after an argument and while she struggled with it, the gun discharged twice, the second shot hitting decedent. Autopsy of the victim revealed a blood-alcohol reading of .25 percent.

State's witness Dexter (Don) Lincoln, an individual found "passed out" from the effects of alcohol at the scene of the death, testified that the defendant produced the gun, said she was going to kill her husband, and did so. The physical evidence is inconclusive because there are no identifiable fingerprints on the weapon, and powder residue from the discharge of the weapon was found on both the defendant's and the decedent's hands.

Prior to trial defendant moved for a change of venue, arguing that numerous articles printed in the local newspaper, the Walla Walla Union Bulletin, constituted prejudicial pretrial publicity, effectively denying defendant the right to a trial by an unbiased and unprejudiced jury. Defendant's motion for change of venue was denied.

The newspaper articles giving rise to the claimed prejudicial pretrial publicity read in pertinent part:

October 31, 1971—front page headline: "Woman Held in Husband's Death"

. . . John Crudup, 46, was shot and killed Friday night at his home 1½ miles south of Walla Walla.

Held pending investigation of murder is Crudup's wife, 39-year-old Zadie, according to sheriff's deputies.

Deputy Prosecutor Jerry Votendahl said Saturday Mrs. Crudup will be arraigned Tuesday or Wednesday on a charge of second degree murder.  . . .

. . .

Department reports said Ernest Norris, a neighbor of the black couple, called the sheriff's office at 10:43 p.m. Friday, stating Mrs. Crudup had come to his home and "said she just shot her husband."

. . .

Votendahl said items that had been atop a television set where Crudup fell were broken, but "other than that there was no evidence of a struggle."

November 4, 1971—front page article, headline: "Crudup Murder Plea: Not Guilty"

Mrs. Zadie Crudup pleaded innocent Wednesday to a second degree murder charge in the shooting death last Friday of her husband, 46-year-old John Crudup.

. . .

"I do know she does have an FBI number," Votendahl said when queried by Judge Tuttle concerning bail reduction. "But we don't have the rap sheet back yet."

December 29, 1971—front page article, headline: "Crudup Death Inquest Begins"

A coroner's inquest will be conducted Wednesday in the case of State v. Mrs. Zadie Crudup, charged with second degree murder.

. . .

No motive for the murder has ever been released by officials.

December 29, 1971—front page article, headline: "Crudup Inquest Begins"

A description of Mrs. Zadie Crudup as "very upset and confused" after the Oct. 29 shooting of her husband was presented Wednesday at the coroner's inquest into John Crudup's death.

. . .

Mrs. Crudup, 39, has been charged with second degree murder in connection with the 46-year-old contractor's death.

"She stated she had killed John," testified a neighbor, Mrs. Ernest Norris, Two Acre Lane.

Mrs. Norris said the statement was made by Mrs. Crudup after the victim's wife came to the Norris' home about 10:30 p.m. that night, requesting aid.

"She seemed puzzled that she had done this," Mrs. Norris said.

She said Mrs. Crudup had stated, "John's the best thing that ever happened to me and now I've killed him."

. . .

Contradictory results were obtained from two polygraph tests administered 10 days apart to Mrs. Crudup, according to testimony.

December 31, 1971—front page article, headline: "Zadie Crudup Says Death Came in 'Tussle' Over Gun'"

January 1, 1972—front page article, headline: "Verdict Crudup Death 'Homicide' "

Homicide 'without excuse or justification and with criminal liability' by Zadie Crudup was the verdict Thursday of a coroner's jury investigating the shooting of John Crudup.

Mrs. Crudup, 39, charged with second degree murder in the case, was not present Thursday afternoon when the six-member panel announced the verdict.

. . .

Zadie Crudup stated while testifying that her husband had named her the beneficiary of his $30,000 indemnity insurance policy after the pair wed last May in Mississippi.

She told jurors her husband was shot following a quarrel between them over financial problems.

Defendant urges that the trial court erred in denying the defendant's motion for a change of venue.

■ The trial court's decision on a motion for change of venue will not be disturbed absent an abuse of discretion. *State v. Braun*, 82 Wn.2d 157, 509 P.2d 742 (1973); *State v. Stiltner*, 80 Wn.2d 47, 491 P.2d 1043 (1971); *State v. Malone*, 75 Wn.2d 612, 452 P.2d 963 (1969). Due process of law requires the granting of a motion for change of venue when a probability of prejudice is shown; actual prejudice need not be shown. *State v. Stiltner, supra*; *Sheppard v. Max-*

*well,* 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966); *Estes v. Texas,* 381 U.S. 532, 14 L. Ed. 2d 543, 85 S. Ct 1628 (1965). In *Stiltner* the court stated at page 54:

[A] denial of due process in cases involving the publicity of criminal matters may be found even without an affirmative showing of actual prejudice. Indeed, where the circumstances involve a probability that prejudice will result, it is to be deemed inherently lacking in due process.

█ Common criteria or factors generally utilized by courts in determining the propriety of an order granting or denying a motion for change of venue based on alleged prejudicial pretrial publicity are: (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn. Annot., 33 A.L.R.3d 17, 33 (1970). *See also Pretrial Publicity-Fair Trial,* Annot., 10 L. Ed. 2d 1243 (1964).

Defendant argues this action is in many ways factually similar to *State v. Stiltner, supra,* in that: (1) both cases received extensive pretrial publicity; (2) both instances involved criminal charges brought in small, closely-knit communities; (3) defendant in *Stiltner,* and the decedent in the present action, were well known within these communities; and (4) in both instances improper statements appeared in the local press which were prejudicial to the defendant's rights to a fair trial. Defendant urges the present action goes beyond *Stiltner* in that a highly publicized coroner's inquest lasting 2 days was conducted, resulting in

a finding that John Crudup's death was the result of the homicide.

The present case is significantly different than *State v. Stiltner, supra.* Reporting in the present action was a non-inflammatory factual reporting of the pretrial criminal procedure, including reporting of the coroner's inquest, while the reporting in *Stiltner* constituted a positive action by the press, eliminating all but one possible defendant in the case.

In denying the motion for change of venue the trial judge stated that he was "not convinced that there is either a high probability or a probability that a jury cannot be obtained in Walla Walla County which can fairly try Mrs. Crudup." Judge Tuttle made other pertinent and quotable observations.[1] He concluded his decision denying the change of venue by saying:

> [I]f counsel is right in saying that there's a high probability that we'll be unable to select a jury in this county

---

[1] Some of these observations are:

"[I]t would surprise me if with jurors coming in from the Waitsburg area, and the Prescott area, and the Burbank area, and the Wallula area, and College Place, and from the voter lists of 25,000 within the city, . . . we don't find a substantial number of jurors who probably have never heard of the Crudups.

"Secondly, the newspaper publicity as it's set forth in the affidavit of course is out of focus as to what the publicity was in reality. I mean these articles are all listed as an exhibit and they are here together. They appeared of course over a period of time. And the average reader of our local newspaper probably doesn't read these articles with the same amount of interest that people who are involved in this case or even the Court may read them. I would have to say honestly as I look back over these articles I either read or scanned them previously but a good amount of the information which is involved in these articles as I read them today comes to me as though I were reading it for the first time. So that even when I would have an interest which might be more specialized than that of the average reader still these articles haven't made any great impression upon me and I don't remember a number of the details that were recited in the article and particularly those details about which counsel for Mrs. Crudup was concerned.

"[W]e live in an age of instant information where we are bombarded with information from day to day, through radio, television, newspapers, magazines, dealing with violence on a worldwide basis, on a nationwide basis, and on a local basis, and I can't help but observe that

which can fairly try Mrs. Crudup, then I think that in the selection process of the jury we are going to find this out. If it appears to the Court that counsel's fears are justified and that the Court's conclusions about a fair trial are unjustified, why at that point certainly either I or whoever the judge is whose [sic] trying the case will transfer the venue on the basis that too many people have read the article and remembered it and have formed conclusions. I will just conclude by saying that in my opinion that will be a surprising situation to me if there are many people who have read these articles and who remember very much about them.

The court's opinion proved correct. Voir dire examination of the members of the jury who tried defendant disclosed no specific recollection and little general remembrance of the content of the publicity, so there was no resultant effect upon their ability to fairly try the defendant. Further, the voir dire of each juror was extensive, but the defendant exercised only two peremptory challenges and only three jurors were excused for cause. This indicates a jury could be obtained, as Judge Tuttle predicted, without exhausting challenges. Additionally, over 4 months elapsed from the last publicity to the date of trial, and over 6 months from the date of the incident.

We find no probability of prejudice and no abuse of discretion in denying defendant's motion for a change of venue.

▮ Defendant next argues that the trial court erred in instructing the jury on manslaughter as a lesser-included criminal offense. It is defendant's contention that absolutely no evidence exists to substantiate the trial court's instruction No. 5,[2] and instruction No. 6.[3]

---

in my opinion that interest in a second degree murder case today runs at a lot lower level than it would have thirty or forty years ago when people were subjected to a smaller bombardment of information day in and day out. And what happens in the courtroom when murder cases come to trial is evidence of this. [The courtroom will, on many occasions, be unfilled and will seldom be overflowing.]"

[2]Instruction No. 5 is as follows:

"The Court instructs that the killing of a human being, under

If there is no evidence to support a verdict of manslaughter, the court should not instruct the jury on manslaughter. *State v. Baker*, 78 Wn.2d 327, 474 P.2d 254 (1970); *State v. Huff*, 76 Wn.2d 577, 458 P.2d 180 (1969); *State v. Moore*, 61 Wn.2d 165, 377 P.2d 456 (1963); *State v. Petty*, 57 Wn.2d 513, 358 P.2d 136 (1961); *State v. Sill*, 47 Wn.2d 647, 289 P.2d 720 (1955). Here, there is evidence of a struggle between the defendant and decedent; there is conflicting evidence as to which party produced the gun, and which party was, in fact, the aggressor. With this conflicting evidence it was proper to place the question of manslaughter before the jury. The jury could properly find either that the defendant was an aggressor in the action and shot the decedent with intent to kill; or alternatively, but not necessarily the only alterna-

---

circumstances amounting to a crime, is called 'homicide'. Two degrees of homicide are in issue in this case. They are:

"(1) Murder in the Second Degree;

"(2) Manslaughter.

"Murder in the Second Degree is the killing of a human being with a design to effect the death of the person killed which act is not excusable or justifiable.

"Manslaughter is a lesser included offense and is the killing of a human being by a person without a design or intent to effect the death of the person killed which act is not excusable or justifiable."

³Instruction No. 6 is as follows:

"You are further instructed that in order to convict the Defendant of the crime of Murder in the Second Degree, as charged against her, the State must prove, beyond a reasonable doubt, the following essential elements of the crime.

"(1) That the Defendant, on the 29th day of October, 1971, did shoot and inflict wounds upon one John Crudup;

"(2) That the Defendant did this act with a design to effect the death of said John Crudup, but without premeditation, which act was not excusable or justifiable;

"(3) That as a result of said wound so inflicted, the said John Crudup died on or about the 29th day of October, 1971;

"(4) That said act upon the part of the Defendant occurred in Walla Walla County, State of Washington.

"Included within the crime alleged in the Amended Information is the lesser offense of Manslaughter. If you find the Defendant is not guilty of the crime of Murder in the Second Degree as alleged in the Amended Information, you must then determine whether she is guilty of Manslaughter."

tive under the evidence, that the defendant was acting in self-defense but used more force than was necessary. *See State v. Sill, supra,* and *State v. Gallagher,* 4 Wn.2d 437, 103 P.2d 1100 (1940). There is more than an inference to support the giving of the manslaughter instructions.

■ Next, did the trial court err in allowing testimony that defendant was the beneficiary of life insurance on the life of decedent? We answer no. Generally, testimony about insurance policies on the life of a decedent are admissible in homicide cases. 1 C. Torcia, *Wharton's Criminal Evidence* § 176, at 329-31 (13th ed. 1972); Annot., 28 A.L.R.2d 857 (1953). In this state testimony of life insurance on the life of a decedent in a homicide case has been held admissible. *See State v. Leuch,* 198 Wash. 331, 88 P.2d 440 (1939).

Defendant next urges that the trial court erred in giving instruction No. 8, and failing to give defendant's proposed instruction No. 8. We disagree. Instruction No. 8 reads:

> Homicide is justifiable when committed in the lawful defense of the slayer when there is reasonable ground to apprehend a design on the part of the person slain to do some great personal injury to the slayer and there is imminent danger of such design being accomplished.

Defendant's proposed instruction No. 8 reads:

> "Justifiable homicide" is a homicide committed in the lawful defense of the accused when there is reasonable grounds to apprehend design on the part of the person slain to commit a felony or to do some great personal injury to the accused, and there is imminent danger of such design being accomplished.

■ Defendant argues that to use the word "slayer" is a comment by the court upon the evidence. The language of the instruction comes directly from RCW 9.48.170.[4] Generally, an instruction that follows the words of a statute is

---

[4]RCW 9.48.170 provides:

"Homicide by other person, when justifiable. Homicide is also justifiable when committed either—

"(1) In the lawful defense of the *slayer,* . . .

"(2) In the actual resistance of an attempt to commit a felony upon the *slayer,* . . ." (Italics ours.)

proper. *State v. Hardwick,* 74 Wn.2d 828, 447 P.2d 80 (1968).

In *State v. Jamerson,* 74 Wn.2d 146, 443 P.2d 654 (1968), the court upheld an instruction using a hypothetical assumption that the vehicle was stolen, stating that the jury first had to determine whether the vehicle was or was not stolen before it would be necessary for them to consider the instruction which was attacked. The same reasoning applies to the defendant's contention concerning instruction No. 8, in that before the jury is to decide the application of this instruction, they first must decide if the defendant is in fact a slayer. We find no error.

■ Next, did the trial court err in giving instruction No. 9-A, which reads:

> The law presumes that a person intends the natural, ordinary and usual consequences of his own voluntary and intentional acts, and if the defendant is shown by the evidence beyond a reasonable doubt to have killed the deceased by an act, the natural and ordinary consequence of which would be to produce death, then it will be presumed that the death of the deceased was intended by the defendant unless the facts and circumstances of the killing, or the evidence, creates a reasonable doubt whether the killing was done purposely.

Defendant contends that by giving instruction No. 9-A, the State has placed the burden upon the defendant to come forth with evidence to create a reasonable doubt as to whether the killing was done purposely, and further, when read in the light of the court's other instructions, instruction No. 9-A creates confusion in the minds of the jury.

This same argument was rejected in regard to a substantially similar instruction in *State v. Mays,* 65 Wn.2d 58, 66, 395 P.2d 758 (1964), where the court stated:

> [O]ur legal system depends upon the idea of personal responsibility, and that the law must hold a person to have intended the usual and ordinary consequences of his acts.

We find no error in the giving of instruction No. 9-A.

■ Defendant next contends the trial court erred in

giving instruction No. 13,[5] in failing to give the defendant's proposed instruction No. 3,[6] and instruction No. 4.[7] We find no merit in this contention. Court's instruction No. 13 is in substance similar to the reasonable doubt instruction approved in *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178

[5]Instruction No. 13 reads as follows:

"You are instructed that the law presumes a Defendant to be innocent until he is proved guilty beyond a reasonable doubt. This presumption is not a mere matter of form, but is a substantial part of the law of the land, and it continues throughout the entire trial and until you have found, if you do so find, that this presumption has been overcome by the evidence beyond a reasonable doubt.

"A reasonable doubt, under the law, which entitled the Defendant to an acquittal, means just what the words imply, a doubt founded upon some good reason. It may not arise from a merciful disposition or a kindly sympathetic feeling or a desire to avoid performing a disagreeable duty. It must arise from evidence, or lack of evidence. It must not be a mere whim or a vague or imaginary conjectural doubt or misgiving founded upon mere possibilities. It must be a substantial doubt such as an honest, sensible, and fair-minded man might with reason entertain, consistent with a conscientious desire to ascertain the truth.

"You must use your common sense as men and women of experience, possessing some knowledge of worldly affairs, and if, after examining carefully all the facts and circumstances in this case, you can say and feel that you have a settled and abiding conviction of the guilt of the Defendant, then you are satisfied of his guilt beyond a reasonable doubt and should convict him. If you do not have such conviction, then you do have a reasonable doubt and should acquit him."

[6]Defendant's proposed instruction No. 3 reads:

"You are instructed that the law raises no presumption against the defendant but the presumption of the law is in favor of her innocence and in order to convict the defendant of the crime alleged in the written charge or complaint, every material and necessary element to constitute such crime must be proved beyond a reasonable doubt; and if the jury entertains any reasonable doubt upon any single essential fact or element necessary thereto, it is your duty to give the benefit of such doubt to defendant and acquit her. This presumption of innocence is not a matter of form merely, which the jury may disregard at pleasure, but is a part of the law of the land, and it is a right guaranteed by that law to every person accused of crime; and this presumption continues with the defendant throughout all stages of the trial until the case has been finally submitted to the jury and the jury has found that this presumption has been overcome by the evidence in the case convincing you beyond a reasonable doubt."

[7]Defendant's proposed instruction No. 4 reads as follows:

"You are instructed that every element of the State's charges against the defendant must be proven beyond a reasonable doubt."

(1959). Further, the defendant's theory of reasonable doubt as proposed in instructions 3 and 4 are adequately covered in instruction 13. The court's refusal to give a requested instruction is not error where the subject is adequately covered in another instruction. *State v. Etheridge*, 74 Wn.2d 102, 110, 443 P.2d 536 (1968); *State v. Perry*, 10 Wn. App. 159, 165, 516 P.2d 1104 (1973).

Defendant next contends it was error to give instruction No. 12,[8] and not to give defendant's proposed instructions Nos. 5,[9] 6,[10] and 15.[11] Defendant contends the court failed to

[8]Instruction No. 12 provides:

"I instruct you that evidence may be of two kinds, direct or circumstantial. Direct evidence relates directly to factual questions and is produced by witnesses testifying directly from their personal observation. Circumstantial evidence relates to facts and circumstances from which the jury may infer other or connected facts which usually and reasonably follow according to the common experience of mankind.

"In order to sustain a conviction on circumstantial evidence alone, however, the facts and circumstances relied upon must be consistent with each other, and consistent with the guilt of the defendant. They must be inconsistent with any reasonable hypothesis or theory of innocence which would establish, or tend to establish, the defendant's innocence.

"If upon consideration of the whole case, you are satisfied beyond a reasonable doubt of the guilt of any defendant, it does not matter whether such certainty has been produced by direct evidence or by circumstantial evidence."

[9]Defendant's proposed instruction No. 5 reads:

"You are instructed that evidence is of two kinds, direct and circumstantial. We have direct evidence when a witness testifies directly, of his own knowledge, of the main fact or facts to be proven. Circumstantial evidence is proof of a certain fact and circumstance in a certain case, from which the jury may infer other connected facts, which usually and reasonably allow according to the common experience of mankind. A crime may be proven by circumstantial evidence, as well as by the direct testimony of eye witnesses. Likewise, the fact that a crime was not committed may be proved by circumstantial evidence. Facts and circumstances in evidence must be inconsistent with any reasonable theory of the defendant's innocence and exclude every reasonable hypothesis other than guilt before you can consider it as evidence upon which you may convict the defendant.

"If the circumstantial evidence leads to a reasonable hypothesis, one of which is consistent with guilt and the other of which is consistent with innocence, you are bound under the law to accept the hypothesis consistent with innocence and find the defendant not guilty."

[10]Defendant's proposed instruction No. 6 reads:

anywhere advise the jury that circumstantial evidence may substantiate defendant's defense, as well as substantiate the position of the prosecution. We disagree.

The third sentence of the first paragraph of instruction 12 does not confine the application of circumstantial evidence to either the State or defendant. The second paragraph merely describes the burden on the State if it relies solely upon circumstantial evidence. The court's instruction No. 12 adequately covers the contention of defendant and is a proper statement of the law in regard to circumstantial evidence. *State v. Courville*, 63 Wn.2d 498, 501, 387 P.2d 938 (1963). The trial court does not have to give a requested instruction when the subject is adequately covered by another instruction. *State v. Passafero*, 79 Wn.2d 495, 487 P.2d 774 (1971).

■ Next, did the trial court err in failing to give defendant's proposed instruction No. 12, which provides:

You have been instructed as to all of the rules of law which may be necessary for you to reach a verdict. Whether some of the instructions will apply will depend upon your determination of the facts. You will disregard any instruction which applies to a state of facts which you determine does not exist. You must not conclude

---

"You are not permitted to find the defendant guilty of the crime charged against her based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.

"Also, if the evidence as to any particular count is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to her guilt."

¹¹Defendant's proposed instruction No. 15 reads:

"You are instructed that in considering the evidence in this case you are to take into consideration the physical facts, together with the oral testimony, and in this connection you are instructed that oral statements of the witnesses must yield to the undisputed physical facts and considerations with which the oral testimony is not reconcilable."

from the fact that an instruction has been given that the Court is expressing any opinion as to such fact.

By not giving this instruction, the defendant contends the trial court in effect meant that the jury had no way of knowing that they were at liberty to disregard instructions not applicable to the factual determination as made by them. The defendant cites no authority for this claimed error. Generally, when no authority is cited in support of an assignment of error the court will not consider it unless the error is apparent. *State v. Pam*, 1 Wn. App. 723, 463 P.2d 200 (1969). After reading the instruction as a whole we find no error by the court's refusal to give the defendant's proposed instruction.

█ Lastly, defendant urges that the trial court erred in failing to give defendant's proposed instruction No. 13, which provides:

> Both the state and the defendant are entitled to the individual opinion of each juror.
> It is the duty of each of you to consider the evidence for the purpose of arriving at a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after a discussion of the evidence and instructions with the other jurors.
> You should not hestitate to change an opinion if you are convinced that it is erroneous. However, you should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor such a decision.

We disagree. The giving or refusing to give this instruction rests within the discretion of the trial court. *State v. Parker*, 79 Wn.2d 326, 485 P.2d 60 (1971).

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied August 19, 1974.

Review denied by Supreme Court November 4, 1974.