[No. 28018-7-III.   Division Three.   November 30, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. BLAKE EDWARD YOUNG, *Appellant*.

710

712

*Kenneth H. Kato*, for appellant.

*James P. Hagarty, Prosecuting Attorney*, and *Therese M. Murphy* and *David B. Trefry, Deputies*, for respondent.

¶1 KULIK, C.J. — Blake Young ran a red light at high speed and crashed into another vehicle, killing two of the three teenagers in the second vehicle. The third teenager was seriously injured. A jury found Mr. Young guilty of two counts of second degree murder, one count of vehicular assault, and one count of second degree theft. On appeal, Mr. Young contends the trial court erred by deferring its decision on his motion for a change of venue, by admitting

his statements to police, by allowing the prosecuting attorney to introduce evidence of prior crimes on rebuttal, and by limiting the testimony of a defense expert. Mr. Young also asserts that the evidence was insufficient to support his murder convictions.

¶2 We conclude that Mr. Young's assertions of error are without merit, and we affirm the convictions.

## FACTS

¶3 On the afternoon of October 22, 2006, Mr. Young, driving a stolen Honda, ran a red light and hit another vehicle, killing two of the three passengers in the second vehicle. Before the collision, Mr. Young saw a police car driving behind him. Mr. Young knew there was a warrant out for his arrest for failing to report to probation. Mr. Young also knew the vehicle he was driving was stolen. Mr. Young concluded the police officer was coming after him so he decided to run and get away. The police officer pursued Mr. Young.

¶4 Mr. Young had eluded police while driving on other occasions. Mr. Young had successfully evaded police a few times and had been caught once. On that occasion, he had driven at excessive speeds, hit a spike strip, ran a red light, and had a near collision.

¶5 Mr. Young used 3.5 grams of methamphetamine in the 48 hours before the collision. Mr. Young testified that during the chase, he was not concerned about his driving. He felt in control and thought he could stay in control. Mr. Young did not feel he was putting people at risk even though he was driving at high speeds and on the wrong side of the road. Mr. Young never thought there would be a collision.

¶6 Bobby Aguilar, Edgar Trevino-Mendoza, and Juan Hernandez-Ortega were in the second vehicle. Mr. Aguilar died at the scene, Mr. Trevino-Mendoza died eight days later, and Mr. Hernandez-Ortega was seriously injured.

¶7  A jury found Mr. Young guilty of two counts of second degree murder, one count of vehicular assault, and one count of second degree theft. Mr. Young appeals his two murder convictions.

## ANALYSIS

¶8  *Venue.* Ten months before trial, Mr. Young filed a motion for a change of venue. Mr. Young pointed out that the "Aguilar/Mendoza Bill," which was named for the victims of the collision, was before the legislature. This legislation passed, increasing the standard sentence for eluding a police vehicle and endangering citizens. LAWS OF 2008, ch. 219, §§ 1, 2 (effective June 12, 2008). Mr. Young drew the court's attention to the extensive publicity in the case.

¶9  The court acknowledged that it was aware of the publicity and deferred making a decision on the motion for a change of venue until an attempt was made to seat a jury. On January 21, 2009, jury voir dire began. After jury questionnaires, general questioning, and open interviews with individual jurors, a jury was chosen. The trial began on January 26, 2009.

¶10  "The decision to grant or deny a motion for change of venue is within the trial court's discretion." *State v. Rupe*, 108 Wn.2d 734, 750, 743 P.2d 210 (1987). An abuse of discretion occurs when the court's decision is manifestly unreasonable or is based on untenable grounds or untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶11  A motion for a change of venue should be granted when necessary to provide the defendant his due process guaranty of a fair and impartial trial. *Rupe*, 108 Wn.2d at 750. The right to a jury trial includes the right to an unbiased and impartial jury. A trial by a jury with biased or prejudiced jurors is not a constitutional trial. *State v. Stiltner*, 80 Wn.2d 47, 53, 491 P.2d 1043 (1971). "The defendant only need show a probability of unfairness or

prejudice." *Rupe*, 108 Wn.2d at 750. The question that the court must ask "is not whether the community remembered the case, but whether the jurors at . . . trial had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984).

¶12 Washington courts have recognized factors that aid in the inquiry of whether the trial court has abused its discretion by denying a motion for a change of venue. *State v. Crudup*, 11 Wn. App. 583, 587, 524 P.2d 479 (1974). The *Crudup* factors are

> (1) the inflammatory or noninflamatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.

*Id.* However, "[t]he *Crudup* factors may not be dispositive in every change of venue case." *Rupe*, 108 Wn.2d at 752.

¶13 Mr. Young contends the court abused its discretion by reserving its decision on the motion for a change of venue until an attempt was made to seat the jury. This argument is unpersuasive. Consideration of *Crudup* factors 4, 5, and 6 required the trial court to examine whether there were problems selecting the jury. Mr. Young fails to establish that there was any difficulty in seating a jury. The court granted innumerable "for cause" challenges. Mr. Young cannot point to any occasion where a challenge made by him was denied or where a juror stated that the pretrial publicity had affected his or her ability to be fair and impartial.

¶14 Mr. Young next asserts that the court's decision to delay its decision on the motion for a change of venue put

defense counsel in the untenable position of having to voir dire jurors by asking them to recall the very publicity which defense counsel sought to avoid. But this type of inquiry, without more, does not demonstrate that a juror is biased or prejudiced. Moreover, the application of the *Crudup* factors contemplates an examination of each juror's knowledge of pretrial publicity and its effect on each juror.

¶15 Mr. Young also argues that prejudice should be inferred because the jury returned a verdict in less than three hours. This argument is without merit. Considered alone, the time it takes for a jury to return a verdict does not establish that the jurors were unfair or impartial.

¶16 Mr. Young refers to the Aguilar/Mendoza Bill and the numerous pretrial articles about the collision, suggesting that this publicity required the trial court to grant a change of venue. But Mr. Young fails to show how this pretrial publicity affected any juror's ability to be fair and impartial. Mr. Young need not show actual prejudice. However, here, he fails to show even a probability of prejudice and does not demonstrate that any of the jurors had fixed opinions causing them to be impartial.

¶17 The trial court did not abuse its discretion by denying Mr. Young's motion for a change of venue.

¶18 *Admissions by Mr. Young.* A confession is voluntary if made after the police advise the defendant of his or her rights and the defendant knowingly, voluntarily, and intelligently waives them. *State v. Aten*, 130 Wn.2d 640, 663, 927 P.2d 210 (1996). We do not disturb a trial court's determination of voluntariness so long as the trial court found by a preponderance of the evidence that the statement was voluntary and substantial evidence in the record supports that conclusion. *State v. L.U.*, 137 Wn. App. 410, 414, 153 P.3d 894 (2007), *aff'd sub nom. State v. Unga*, 165 Wn.2d 95, 196 P.3d 645 (2008).

¶19 At the CrR 3.5 hearing, the State presented the testimony of Officer Ira Cavin and played a videotape showing Mr. Young in the back of the police vehicle when he

was given his rights. Mr. Young did not testify at the hearing and did not allege that he was under the influence of any substance. Mr. Young also did not object to the admission of his statement at trial.

¶20 The court did not enter written findings of fact. However, the parties agree that the court's oral ruling adequately sets forth its reasoning. Because Mr. Young did not challenge the court's findings of fact, the findings are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997).

¶21 In its oral ruling, the court noted that there were no disputed facts. The court determined that all of the facts that came in indicated that the statements were made knowingly and voluntarily without threats and promises. The court determined that "[Mr. Young] was under some emotional distress at the time; nevertheless, it's the Court's feeling that that doesn't affect the voluntariness of the statement that he made." Report of Proceedings (RP) at 36. The court concluded that Mr. Young's statements were voluntary.

¶22 When determining whether a defendant's statements during custodial interrogation are admissible and not coerced in violation of the Fifth Amendment to the United States Constitution, a court considers the totality of the circumstances, including the " 'crucial element of police coercion'; the length of the interrogation; its location; its continuity; the defendant's maturity, education, physical condition, and mental health; and whether the police advised the defendant of the rights to remain silent and to have counsel present during custodial interrogation." *Unga*, 165 Wn.2d at 101 (quoting *Withrow v. Williams*, 507 U.S. 680, 693-94, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993)). Importantly, "[a] defendant's mental disability and use of drugs at the time of a confession are also considered, but those factors do not necessarily render a confession involuntary." *Aten*, 130 Wn.2d at 664.

¶23 Mr. Young contends that his statements to police were not voluntary because he had used methamphetamine

during the 48 hours before the accident and because he had gone without sleep for 53 to 54 hours before the accident.

¶24 An error raised for the first time on appeal will not be reviewed. *State v. Huyen Bich Nguyen*, 165 Wn.2d 428, 433, 197 P.3d 673 (2008). An exception exists for a "manifest error affecting a constitutional right." RAP 2.5(a)(3). A "manifest error" is an error that is "unmistakable, evident or indisputable." *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). An error is manifest if it results in actual prejudice to the defendant or the defendant makes a " 'plausible showing' " that the asserted error had practical and identifiable consequences in the trial of the case. *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (quoting *Lynn*, 67 Wn. App. at 345).

¶25 There was no error here. The court concluded that Mr. Young's emotional distress did not affect the voluntariness of his statement. A trial court's conclusion as to the admissibility of a confession will not be set aside on appeal if, after an examination of the record, substantial evidence supports that conclusion. *L.U.*, 137 Wn. App. at 414. Substantial evidence supports the trial court's conclusion. Although Mr. Young had taken methamphetamine and gone without sleep, he waived his rights shortly after stealing a vehicle and driving it in a manner allowing him to evade police officers. Significantly, the court made its determination that Mr. Young's waiver of his rights was voluntary after viewing a videotape of Mr. Young making this waiver. The court did not err by concluding that Mr. Young's statement was voluntary.

¶26 Even if we assume that there was a constitutional error here, any error is harmless. A constitutional error is harmless only if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). Here, the evidence against Mr. Young was overwhelming even without the confession.

¶27 *Prior Crimes.* ER 401 states, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Evidence is relevant if a logical nexus exists between the evidence and the fact to be established." *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15 (1999). To justify the admission of prior acts under ER 404(b), the State must demonstrate that the evidence serves a legitimate purpose and is relevant to prove an element of the crime charged, and that its probative value outweighs its prejudicial effect. *State v. Magers*, 164 Wn.2d 174, 184, 189 P.3d 126 (2008).

¶28 We review a trial court's decision to admit ER 404(b) evidence for an abuse of discretion. *State v. Grant*, 83 Wn. App. 98, 105, 920 P.2d 609 (1996). A court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds. *Id.*

¶29 Rebuttal evidence is admissible if not cumulative and if it answers new points raised by the defense. The admission of such evidence is within the court's discretion and will not be overturned absent a manifest abuse of that discretion. *State v. White*, 74 Wn.2d 386, 394-95, 444 P.2d 661 (1968). A defendant may open the door to evidence that would otherwise be inadmissible, even if constitutionally protected, if the rebuttal evidence is relevant. 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 66-67 (5th ed. 2007).

¶30 Mr. Young was charged with two counts of second degree murder. The felony underlying these counts was felony attempting to elude. In other words, the State had to prove that Mr. Young committed the crime of attempting to elude a police vehicle. The court's instruction 7 was drawn from former RCW 46.61.024(1) (2003), which read that a person is guilty of attempting to elude a police vehicle when he "willfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a reckless manner while attempting to elude a pursuing

police vehicle, after being given a visual or audible signal to bring the vehicle to a stop."

¶31 Mr. Young claimed throughout the trial that he was not able to understand or perceive the risks of an attempt to elude police. Mr. Young used evidence of his prior bad acts to argue that the State could not prove the intent element of second degree murder. Specifically, Mr. Young testified about an incident when he was driving a stolen vehicle and was stopped by police. When asked if he had ever run from the police before, Mr. Young stated, "[T]here's been a few times where I've gotten away and there's another time where I was caught." RP at 567.

¶32 The State elicited the rebuttal testimony to counter Mr. Young's claim that he was not able to understand or perceive the risks of attempting to elude police. The court's ruling allowed the State's rebuttal testimony but prevented the State from presenting this evidence during direct testimony. Jury instruction 23 stated that the evidence of prior attempting to elude may be considered "only for the purpose of determining knowledge or lack of knowledge of the consequences." Clerk's Papers (CP) at 52.

¶33 The court did not abuse its discretion by admitting the State's rebuttal testimony concerning Mr. Young's prior incidents of attempting to elude a police vehicle.

¶34 *Testimony of Defense Expert.* The admissibility of evidence is within the discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. *State v. Thomas*, 123 Wn. App. 771, 778, 98 P.3d 1258 (2004). An expert's testimony is admissible if it is helpful to the trier of fact and concerns matters beyond the common knowledge of average laypersons and does not mislead the jury. *Id.* (citing ER 702). Defendants do not have the right to introduce evidence that is irrelevant or otherwise inadmissible. *Id.*

¶35 ER 705 provides that an expert may testify in terms of an opinion and give the reasons for that opinion. ER 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

¶36 Dr. Mark Cunningham, a clinical and forensic psychologist, testified as a defense expert. At the request of the State, the court limited Dr. Cunningham's testimony. Dr. Cunningham was allowed to testify as to his opinion about Mr. Young's ability to assess risk. Dr. Cunningham testified at length about Mr. Young's drug and alcohol histories, and the development and risk factors for substance abuse. The court refused to allow Dr. Cunningham to testify concerning a painting by Mr. Young's aunt and other factors considered by Dr. Cunningham, including mood disorder, personality disturbance, general family dysfunction, adverse parenting, moral culpability, mitigation, character strength, and rehabilitation potential.

¶37 Mr. Young contends the court abused its discretion by limiting Dr. Cunningham's testimony. He maintains that all of the factors considered by Dr. Cunningham were admissible.

¶38 The court did not abuse its discretion by limiting Dr. Cunningham's testimony. Specifically, Dr. Cunningham testified concerning Mr. Young's use of methamphetamine, his lack of sleep, the loss of his girl friend, the loss of his home, his suicidal intentions, his genetic predisposition to drugs and alcohol, his family history of drug and alcohol abuse, his depression, and the traumatic experiences he had experienced as a child. Dr. Cunningham testified that "this is a 20-year-old meth-intoxicated, meth-dependent, sleep deprived, psychological disorder, adverse history, it's only a small step from the risk not being unreasonable to I don't see the risk." RP at 688.

¶39 Mr. Young does not argue that the court's limitations prevented Dr. Cunningham from testifying as an expert and rendering an expert opinion. Mr. Young made

no offer of proof regarding the limitations imposed by the court. Mr. Young fails to demonstrate that the restricted information was essential to the ability of this expert to render an opinion. The court did not abuse its discretion by limiting Dr. Cunningham's testimony.

¶40 *Sufficient Evidence.* Mr. Young challenges the sufficiency of the evidence. Sufficient evidence supports a conviction if the evidence establishes that each element of the crime was proved beyond a reasonable doubt. *State v. Aver*, 109 Wn.2d 303, 310-11, 745 P.2d 479 (1987) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

¶41 A challenge to the evidence admits the truth of the State's evidence and all inferences that can be reasonably drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The reviewing court gives deference to the trier of fact on the issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Lubers*, 81 Wn. App. 614, 619, 915 P.2d 1157 (1996).

¶42 The only element of second degree murder challenged by Mr. Young is the element requiring the State to prove, beyond a reasonable doubt, that Mr. Young attempted to elude a police vehicle.

¶43 Instruction 4 defined the crime of "second degree murder" as follows:

> A person commits the crime of Second Degree Murder when he commits the crime of Attempting to Elude a Police Vehicle and in the course of and in furtherance of such crime he causes the death of a person other than one of the participants.

CP at 33.

¶44 Instruction 7 defined the crime of "attempting to elude a police vehicle" as follows:

> A person commits the crime of Attempting to Elude a Police Vehicle when he *willfully* fails or refuses to bring his vehicle to a stop after being given a visual or audible signal to bring the vehicle to a stop by a police officer, while attempting to elude a pursuing police vehicle he drives his vehicle in a *reckless* manner.

CP at 36 (emphasis added).

¶45 Instruction 8 provided, "Willful means acting intentionally and purposely, and not accidentally or inadvertently." CP at 37. Instruction 9 stated that "[a] person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime." CP at 38. Instruction 13 defined "to operate a motor vehicle in a reckless manner" as meaning "to drive in a rash or heedless manner, indifferent to the consequences." CP at 42.

¶46 Mr. Young asserts that the State failed to prove beyond a reasonable doubt that he was acting willfully with intent by driving "in a rash or heedless manner, indifferent to the consequences." Mr. Young bases this argument on his own testimony. He testified that at the time of the collision, he was on methamphetamine and had gone without sleep for 53 to 54 hours. Mr. Young also testified that he felt invincible and did not feel that he was putting anyone at risk. In Mr. Young's view, he was on methamphetamine and sleep-deprived and he was unable to appreciate the consequences of his actions.

¶47 A challenge to the sufficiency of the evidence is not evaluated based solely on the testimony of the defendant. A challenge to the sufficiency of the evidence admits all of the State's evidence and all reasonable inferences that can be drawn from that evidence. Consequently, the standard is not whether Mr. Young felt invincible, but whether he was driving "in a rash or heedless manner, indifferent to the consequences." CP at 42.

¶48 The evidence here is overwhelming. Officer Cavin testified that during the chase, Mr. Young's actions included driving at excessive speeds, swerving in and out of traffic, running stop signs and red lights, driving into an oncoming lane of traffic, and ultimately running a red light without attempting to slow or stop. Mr. Young testified that he knew he was running away from police and why. Officer Cavin testified that the speed limit was 30 m.p.h. but that Mr. Young's speed during the chase fluctuated from the

speed limit to speeds in excess of 85 m.p.h. One witness testified that she observed Mr. Young laughing during the chase. More importantly, jurors were able to view actual footage of the chase taken by a police dashboard camera.

¶49 We conclude that sufficient evidence allowed the jury to conclude beyond a reasonable doubt that Mr. Young acted willfully and intentionally by driving "in a rash or heedless manner, indifferent to the consequences" when he attempted to elude police.

¶50 We affirm the convictions.

BROWN and SIDDOWAY, JJ., concur.

Review denied at 171 Wn.2d 1013 (2011).