[No. 27324. Department One. March 22, 1939.]

THE STATE OF WASHINGTON, *Respondent*, v.
BERNHARD R. LEUCH, *Appellant*.[1]

[1] Reported in 88 P. (2d) 440.

332

*Chas. R. Lewis,* for appellant.

*Smith Troy* and *Doane Brodie,* for respondent.

JEFFERS, J.—The defendant, Bernhard R. Leuch, was convicted of murder in the first degree, and sentenced to death, for the unlawful killing, on June 1, 1938, of his wife, Lena Leuch. This is an appeal by him from the judgment entered, and from an order denying a new trial.

No question of the insufficiency of evidence is presented. The only errors assigned are: (1) The court erred in sustaining challenges for cause to two prospective jurors, whose opinions precluded capital punish-

ment. (2) The court erred in permitting the introduction into evidence of a life insurance policy upon the deceased, without proof that appellant knew such policy was in existence. (3) The court erred in receiving certain testimony and evidence from expert witnesses. (4) The special prosecuting attorney was guilty of misconduct during the trial of the cause and in his argument to the jury. In view of the assignments of error, we shall discuss only so much of the testimony herein as may be necessary to a consideration of such assignments.

The following questions were propounded to Mr. Reader, a prospective juror:

"Q. Mr. Reader, have you any conscientious scruples against the infliction of the death penalty in cases of murder in the first degree? A. Well, yes. Q. You have? A. Yes."

Whereupon a challenge for cause was submitted to the juror by Mr. Troy, special prosecuting attorney. Mr. Lewis, attorney for appellant, objected, and thereafter Mr. Lewis propounded the following questions to the juror:

"Q. Mr. Reader, are your objections such that under no conditions as presented to you that you could not return the death penalty? A. Well, I just don't feel that I have the right to do that. Q. You feel that you have not the right in any case? A. No, I don't."

Thereupon the court excused the juror. Appellant excepted to the ruling of the court.

The same questions were asked prospective juror Wilkinson, and the same answers were made as by Reader, whereupon a challenge to the juror was submitted by the state and sustained by the court, to which ruling appellant excepted.

It is the contention of appellant that, in excusing the jurors, both the appellant and the jurors were deprived

of their rights under the fourth amendment to the state constitution.

Amendment 4, of Art. 1, § 11, of the state constitution, in so far as material, reads as follows:

"Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or be disturbed in person or property on account of religion. . . . No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony."

Rem. Rev. Stat., § 2142 [P. C. § 9369], provides:

"No person whose opinions are such as to preclude him from finding any defendant guilty of an offense punishable with death shall be compelled or allowed to serve as a juror on the trial of any indictment or information for such an offense."

Appellant contends that conscientious scruples are, in fact, religious opinions. This question seems never before to have been presented to this court.

Webster's New International Dictionary defines "conscience" as follows:

"Sense or consciousness of the moral goodness or blameworthiness of one's own conduct, intentions, or character, together with a feeling of obligation to do or be that which is recognized as good;—often with special reference to feelings of guilt or remorse for ill-doing. Hence, a faculty, power, or principle, conceived to decide as to the moral quality of one's own thoughts or acts, enjoining what is good."

The word "scruple" is defined by Webster as follows:

"Hesitation as to action or decision from the difficulty of determining what is right or fitting; unwillingness, doubt, or hesitation, proceeding from conscientiousness."

The case of *People v. Rollins,* 179 Cal. 793, 179 Pac. 209, seems to us to answer the questions raised by appellant. Section 4, of Art. 1, of the constitution of the state of California is, to all intents and purposes, the same as the fourth amendment of Art. 1, § 11, of our state constitution, and subd. 8, of § 1074, of the California Penal Code is practically the same as Rem. Rev. Stat., § 2142. In the case cited, it is said:

"The only point made on the appeal is that the trial court erred in allowing challenges interposed by the district attorney to several jurors under subdivision 8 of section 1074 of the Penal Code, which provides as follows:

" 'If the offense charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; in which case he must neither be permitted nor compelled to serve as a juror.'

"There were several jurors excused by the trial court on challenge by the district attorney on this ground. As to all of them it was clear from their answers to questions on their examination that in no case would they agree to a verdict of guilt carrying the death penalty."

The first question raised in the instant case was that, even though the juror had conscientious scruples against the death penalty, he was not disqualified, because the jury might not inflict the death penalty, but life imprisonment. This question was also raised in the *Rollins* case, *supra,* and, answering it, the supreme court of California said:

"It has heretofore always been thought that the provision [referring to subd. 8, § 1074, Penal Code] means that if the offense 'be punishable by death,' as is true of the offense of murder in the first degree notwithstanding that it is also punishable in the discretion of the jury in the particular case by imprisonment for life, the entertaining by a juror of such conscientious opinions relative to capital punishment as would pre-

clude his rendering in any case a verdict carrying the death penalty brings him within its scope, and requires the allowance of a challenge interposed to his serving. . . . We have no doubt that this is the meaning and proper construction of the provision. The clear object of the provision is to accomplish the exclusion from the jury in such a case of any one whose conscientious opinion as to capital punishment would not permit him to concur in a verdict of guilty which entailed the death penalty—in other words, would not permit him to act as the law contemplates he should act, free to render any verdict that the circumstances of the case call for, regardless of the effect of such verdict."

It was also claimed in the *Rollins* case, *supra,* that subd. 8, of § 1074, of the Penal Code was unconstitutional, because it was violative of Art. 1, § 4, of the state constitution, and, referring to subd. 8, the court said:

"All that the provision quoted means is that a person called as witness or juror 'is competent without any respect to his religious sentiments or convictions, the law leaving this matter of *competency* to legal sanctions, or, at least, to considerations independent of religious sentiments or convictions.' . . . In other words, he may not be debarred as a witness or juror because of his religious faith, and that element must be disregarded in determining his 'competency.' Section 1074 of the Penal Code has nothing whatever to do with any question of 'competency' of jurors, a matter covered by sections 198 and 199 of the Code of Civil Procedure, and section 1046 of the Penal Code. That section prescribes grounds of challenge for implied bias, matters going to the ability of the juror, regardless of his competency to act as a juror generally, to fairly and impartially try the particular case in accord with the law applicable thereto. Certainly the constitutional provision cannot be held to preclude legislation reasonably looking to the exclusion by challenge from a jury in any case of any person whose mind is in such condition from any cause whatever that he cannot try

and determine the cause in accord with the law applicable thereto."

See *Smith v. Smith,* 7 Cal. App. (2d) 271, 46 P. (2d) 232; 15 Cal. Jur. 354, 364.

We are entirely in accord with the decision in the *Rollins* case, *supra,* and with the reasoning therein advanced, and we are therefore clearly of the opinion that the challenge to prospective jurors Reader and Wilkinson was properly sustained.

■ Did the court err in admitting the policy of insurance on Lena Leuch, in which the appellant was beneficiary? Appellant's objection was based upon the failure of the state to show that appellant knew the policy was in existence. Duncan Wilson, agent for the Metropolitan Life Insurance Company, testified that appellant called him on the telephone and wanted him to come to the Leuch home to talk about insurance on his children and his wife; that he called at the home, and the matter of insurance was discussed, and that, in view of Mr. Leuch's salary, he advised that a policy for five hundred dollars be taken out for Mrs. Leuch and small amounts for the children; that appellant insisted on a policy of one thousand dollars for Mrs. Leuch, and that such a policy was written, naming Mr. Leuch as beneficiary; that Mr. Leuch paid the first premium and was given a receipt to the effect that, as soon as Mrs. Leuch visited the doctor named by the witness, the policy would be in effect; that thereafter Mrs. Leuch visited the doctor and took the medical examination, and the policy was issued and delivered to Mrs. Leuch; that appellant was not present when the policy was delivered, in the latter part of April, 1938; that appellant instructed the witness to call at his home for the premiums as they became due. We think that clearly, under the testimony, the question of whether or not appellant knew the policy was in force

became a matter for the jury to determine. The policy was properly admitted.

It is next claimed that the court erred in permitting Stanley MacDonald, ballistic expert, to testify to experiments made with the death gun, and in permitting Doctor Menne to testify concerning the length of Lena Leuch's arms, from observing her coat. There was testimony that deceased was killed with a .380 Colt automatic pistol, and that such a gun was found lying beside Mrs. Leuch, when she was first discovered by appellant; that this gun belonged to appellant, and had been redeemed from a pawn shop by appellant a few days before the killing; that the gun lay on the floor, smoothly wrapped in a cloth; that there were practically no powder marks or burns on the dress or body of Mrs. Leuch. There was also testimony to the effect that, because of these conditions and the way the shot ranged through the body of Mrs. Leuch and entered the wall, the deceased could not have fired the shot herself, when the length of her arms was considered; that appellant said Mrs. Leuch did not know anything about guns, and was afraid of them.

The testimony of Mr. MacDonald, whose qualifications as a ballistic expert were beyond question, referred to tests made by firing a number of shots into cardboard targets at different distances, with the gun found beside the body of Mrs. Leuch, using the same kind of ammunition as caused her death, the purpose being to see how the powder markings compared with the powder marking on the dress worn by Mrs. Leuch at the time she was killed, as bearing on the distance from Mrs. Leuch at which the gun was fired. The tests in dropping the gun with a cloth wrapped around it, were to see whether or not the cloth would remain smoothly around the gun, when dropped to the floor.

The testimony of Doctor Menne, to which objection

was made, was to the effect that, based upon his examination after placing Mrs. Leuch's coat on another person of similar size, the approximate distance between the armpit in front and the center of the palm of the hand was twenty inches.

Considerable discretion must be given the trial court in determining whether or not experiments such as those just referred to are carried on under conditions sufficiently similar to the conditions shown by the testimony of the case under consideration, as to permit just comparisons to be made. We believe the trial court exercised a sound discretion in this case, and that the testimony of Mr. MacDonald and Doctor Menne was properly admitted. *State v. Gruber,* 150 Wash. 66, 272 Pac. 89.

The fourth assignment of error is claimed because of the following statement made by Mr. Troy: "We want the jury to hear all the evidence. Perhaps you don't want them to have it." No objection was made to the statement, nor was the court requested to strike the statement and instruct the jury to disregard it. Regardless of the failure to move to have this statement stricken, and the jury instructed to disregard it, we have carefully examined the record, in order to determine whether or not the statement, conceding that it was improper, constituted such prejudicial error as to deprive appellant of a fair trial, and we are convinced that it did not. We are also of the opinion that no error can be predicated thereon. *State v. Regan,* 8 Wash. 506, 36 Pac. 472; *State v. Bailey,* 31 Wash. 89, 71 Pac. 715; *State v. Meyerkamp,* 82 Wash. 607, 144 Pac. 942; *State v. Johnson,* 103 Wash. 59, 173 Pac. 723; *State v. Melson,* 186 Wash. 8, 56 P. (2d) 710; *State v. Shay,* 186 Wash. 154, 57 P. (2d) 401.

We do not think the statement constituted such

flagrant misconduct of counsel as to bring it within the rule announced in *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486; *State v. Navone,* 186 Wash. 532, 58 P. (2d) 1208; and *State v. Smith,* 189 Wash. 422, 65 P. (2d) 1075.

Error is also claimed because of the following statement made by Mr. Troy in his argument to the jury: "If you see fit to inflict the death penalty, not one person in Mason county will criticize you for your verdict." This statement does not purport to be a statement made by Mr. Troy, as shown by the reporter's notes, but is what Mr. Lewis, counsel for appellant, claimed Mr. Troy said. Mr. Troy denied that he made the statement as above set forth, and the trial judge, when the matter was presented to him, on a motion to declare a mistrial, stated: "Well, I do not recall the exact language. There was nothing that I thought at the time was beyond argument." In view of this record, and in view of the statement of the trial judge, who has had a wide experience in trial work, we are of the opinion that no statement was made by Mr. Troy which would constitute prejudicial error.

Appellant was represented by able counsel in this case, and the record discloses that his rights were well protected, both in the lower court and in this court, and that he had a fair trial in every respect.

The judgment is affirmed.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.