[No. 3507-7-III. Division Three. April 21, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v.
JAMES FOY DALEY, *Appellant.*

*Richard L. Cease, Public Defender,* and *Roger K. Gigler, Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* for respondent.

MUNSON, J.—Sixteen–year–old James Foy Daley appeals his jury conviction of first degree manslaughter and taking a motor vehicle without permission.

On the morning of January 5, 1979, the body of LaVon Wesley Palmer was found in his room at the Holiday Inn West Motel in Spokane. Three bullets, fired at close range, caused his death.

It was apparent from the motel room that a struggle had occurred and individuals in an adjacent room said they overheard people arguing in loud voices the evening of January 4, 1979. When the noise subsided, they looked out a window and saw someone run from the motel room, get into the victim's car, and leave the area at a high speed.

Daley said his brother drove him downtown on the evening of January 4, 1979, to visit a young lady. He changed his mind and decided to walk home. He was approached by Palmer, who asked directions to the Holiday Inn and offered him $5 to personally direct him to the motel. Upon arrival, Palmer allegedly requested that Daley come into the room to meet a friend. Upon reaching the door, Daley testified he was pushed into the room. Fearful of a homosexual attack, he ran into the bathroom and held the door

closed. Daley said he then removed a .22 caliber revolver[1] from behind his belt, opened the door, and when Palmer reached for the gun, Daley fired. During the subsequent struggle, two more shots were fired. When Palmer fell to the floor, Daley saw his car keys, took them, and ran.

Daley was charged with first degree murder and taking a motor vehicle without permission. At trial, the State attempted to show Daley deliberately allowed himself to be "picked up" by someone he believed to be a homosexual, so Daley could rob him. The State further argued that when Daley attempted to rob Palmer, Palmer resisted and was killed in the resulting struggle. Daley contended his actions were based upon self–defense.

Daley initially contends the court erred in not instructing the jury that the State has the burden to prove the absence of self–defense. We disagree. In *State v. Hanton*, 94 Wn.2d 129, 134, 614 P.2d 1280, *cert. denied*, 449 U.S. 1035, 66 L. Ed. 2d 497, 101 S. Ct. 611 (1980), the court held:

> If a defendant presents sufficient evidence to raise an issue of self–defense, the court need only instruct on it without allocating the burden of proof. Such an instruction permits a defendant to fully argue his theory of the case. *State v. King*, 92 Wn.2d 541, 546, 599 P.2d 522 (1979). The jury may then consider the evidence of self–defense in determining whether a defendant was acting recklessly.

Here, the court: (a) instructed the jury that recklessness was an element of first degree manslaughter, and as such the State had to prove its presence beyond a reasonable doubt; (b) accurately defined recklessness; and (c) instructed the jury as to justifiable homicide or self–defense. Nothing more was required.

Daley also claims the court erred in instructing the jury that justifiable homicide and self–defense are synonymous terms, thereby placing a burden on the defense to

---

[1]Mr. Daley testified he believed some protection was necessary when he visited his brother because of sporadic violence in that neighborhood.

prove not only the fact of self–defense, but also its qualification as justifiable homicide. This contention, in light of the preceding, is without merit. Additionally, the terms "justifiable homicide" and "self–defense" have been used interchangeably by both the Washington and United States Supreme Courts.[2]

Lastly, Daley contends the court erred in instructing the jury that it is lawful for consenting adult males to enter into a homosexual relationship. He argues the instruction implies the meeting of the parties was based on mutual consent to sexual activity.

█ The State's theory urged the jury to believe Daley accompanied Palmer only because Daley thought Palmer was a homosexual, and Daley planned to rob him. The State argues the instruction merely advised the jury of the present state of Washington law (*i.e.,* sexual activity between consenting adults is not in itself unlawful), to prevent the jury from trying the victim. Even if we assume that it is error to instruct on a matter unrelated to the elements of self–defense or the crimes charged, Daley fails to state how he was prejudiced or the jury misled by the instruction. Hence, the error, if any, was harmless.

The judgment of the Superior Court is affirmed.

ROE, J., concurs.

McINTURFF, C.J. (concurring)—In argument on the issue of the State's burden to prove the absence of self–defense, its counsel requested guidance in harmonizing the duty espoused in *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), with that set forth in *Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977). The majority has quite understandably declined the invitation, particularly since our Supreme Court has also declined to enter the fray when given the opportunity. *See*

---

[2]*See Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *State v. Hanton, supra* at 133; *State v. Griffith,* 91 Wn.2d 572, 574, 589 P.2d 799 (1979); *State v. Wanrow,* 88 Wn.2d 221, 233–34, 559 P.2d 548 (1977).

*State v. Manuel,* 94 Wn.2d 695, 619 P.2d 977 (1980); *State v. Savage,* 94 Wn.2d 569, 618 P.2d 82 (1980); *State v. King,* 92 Wn.2d 541, 599 P.2d 522 (1979). However, I am constrained to do so.

Shortly after the United States Supreme Court decided *Patterson v. New York, supra,* this court in *State v. Johnson,* 19 Wn. App. 200, 205 n.4, 574 P.2d 741 (1978), observed that *Patterson* appeared to be a retreat from *Mullaney.* After further reflection and the opportunity to examine the many decisions and commentaries which have sought to reconcile the two decisions, I conclude they are irreconcilable.

It is true that a formalistic reading of each case can support a synthesis grounded on the legislative definition of a particular crime, and that such a synthesis exempts our present homicide statutes, RCW 9A.32.030 and .050, from the holding in *State v. Roberts,* 88 Wn.2d 337, 345, 562 P.2d 1259 (1977), because these statutes have deleted the element of excuse or justification. However, this makes the constitutionality of what burden the legislature may place on a defendant dependent upon the drafting skill of the legislature limited only by the eighth amendment (cruel and unusual punishment) to the United States Constitution—a minimal protection yet to be developed. *See Rummel v. Estelle,* 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980). This "definitional" interpretation emasculates the holding of *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), where the court, in addressing the issue of whether proof beyond a reasonable doubt was necessary for criminal convictions, said:

> [W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Winship, supra* at 364. Such debilitation is illustrated by the following. Affirmative defenses benefit the accused. If by defining an affirmative defense the legislature places the burden upon the State to disprove its existence, the legisla-

ture can lessen the State's burden by merely removing the affirmative defense, and thereby undermine the due process mandated by the court in *Winship, i.e.,* the State must prove beyond a reasonable doubt those factors it deems necessary to support the punishment prescribed.

To avoid the devitalization of *Winship, Mullaney* must be viewed as its stillborn child, and *Patterson* as its sole survivor. This conclusion becomes more reasonable when *Mullaney* and *Patterson* are reexamined. In *Mullaney,* the jury was instructed that if the prosecution established beyond a reasonable doubt that the homicide was intentional and unlawful, malice aforethought was conclusively presumed unless the defendant proved heat of passion by a preponderance. This is indistinguishable in operative effect from *Patterson* if the presumption of malice aforethought language is removed. In other words, in *Patterson,* the jury was instructed that the defendant was guilty if the State proved beyond reasonable doubt that the defendant intentionally caused the death of the victim *unless* the defendant proved by a preponderance of the evidence that he had acted under the influence of extreme emotional disturbance. It is time *Mullaney* was laid to rest so that the import of *Winship* is not diminished.

The thrust of *Winship* and *Patterson* should be viewed as a renaissance of substantive due process and not merely a reaffirmation of procedural due process. Consequently, when a *Winship–Patterson* challenge is made to a statute, the court should first determine if the State is required to prove beyond a reasonable doubt (a) an act or failure to act, and (b) a state of mind—intent, knowledge, recklessness, or negligence—in order to support the imposition of a criminal sanction. The court should then scrutinize the propriety of allowing the defendant to interpose in mitigation an affirmative defense with its evidentiary burden in light of the relationship between the wrong defined and the penalty presented. This view of *Winship–Patterson* not only embraces the search for justice which impelled the court to decide *Mullaney,* but also allows a more realistic

approach to passing upon legislatively established standards of accountability for criminal conduct. Moreover, this analysis avoids the concern expressed by Justice Powell in footnote 8 of his dissent in *Patterson,* that an unreasonable penalty could be imposed for the minor violation of the statutorily established mores of society.

Reconsideration denied June 17, 1981.

Review denied by Supreme Court October 16, 1981.