[Nos. 5538-8-III; 6126-4-III.   Division Three.   December 13, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. JUANITA
LENORE HALEY, *Appellant*.

*Michael A. Frost,* for appellant (appointed counsel for appeal).

*E. R. Whitmore, Jr., Prosecuting Attorney,* and *James E. Freeley, Deputy,* for respondent.

McINTURFF, J.—Juanita Haley was charged and convicted of first degree manslaughter and sentenced to not more than 10 years in the penitentiary. She moved for relief from the judgment,[1] arguing she should have been charged with negligent homicide. The motion was denied. An appeal from the denial of the motion was consolidated with the appeal filed from the conviction. We reverse and remand.

On July 9, 1982, at approximately 6 a.m., witnesses observed Mrs. Haley arguing with her former husband, Don Haley, in the parking lot behind KK's Restaurant and Lounge in Wenatchee, Washington. Mrs. Haley, who managed the restaurant, had returned there to take care of daily receipts when Mr. Haley arrived and the confrontation ensued. The witnesses observed Mrs. Haley screaming, kicking and hitting Mr. Haley, who did not try to defend himself. After a quick trip back into the restaurant, Mrs. Haley returned to her car, where she was approached by Mr. Haley who proceeded to talk with her through the open door on the driver's side. Mr. Haley had rested his hands on the top of the car; Mrs. Haley accelerated in reverse, catching him in the doorframe and crushing him to death between the door and a utility pole.

The dispositive issue before us is whether the State erred in charging Mrs. Haley with first degree manslaughter instead of negligent homicide.

---

[1]Counsel on appeal is different than trial counsel.

The pertinent statutes[2] involved in this case were the result of a revision of the criminal code by the Legislature in 1975, Laws of 1975, 1st Ex. Sess., ch. 260, p. 817. Although there have been no case interpretations since the revision, Mrs. Haley relies on *State v. Pyles*, 9 Wn. App. 246, 511 P.2d 1374 (1973) and *State v. Collins*, 55 Wn.2d 469, 348 P.2d 214 (1960), decided prior to the legislative change.

*State v. Pyles, supra*, would be directly on point had it not been for the 1975 amendments. There, Pyles was driving a car while a security guard was running alongside struggling to control the car by grabbing the steering wheel. Pyles continued to accelerate, though not beyond the nor-

---

[2]RCW 9A.32.060 states:

> Manslaughter in the first degree. (1) A person is guilty of manslaughter in the first degree when:
> (a) He *recklessly* causes the death of another person; . . .
> (2) Manslaughter in the first degree is a class B felony.

(Italics ours.)

RCW 9A.20.020 states in part:

> (1) Felony. Every person convicted of a classified felony shall be punished as follows: . . .
> (b) For a class B felony, by imprisonment in a state correctional institution for a maximum term of not more than ten years, or by a fine in an amount fixed by the court of not more than twenty thousand dollars, or by both such imprisonment and fine;

RCW 9A.32.020(2) provides:

> Nothing contained in this chapter shall affect RCW 46.61.520.

RCW 46.61.520 stated:

> Vehicular homicide—Penalty. (1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, or by the operation of any vehicle in a *reckless* manner or with *disregard for the safety of others*, the person so operating such vehicle is guilty of vehicular homicide.
> (2) Any person convicted of negligent homicide by means of a motor vehicle shall be punished by imprisonment in the state penitentiary for not more than ten years, or by imprisonment in the county jail for not more than one year, or by fine of not more than one thousand dollars, or by both fine and imprisonment.

(Italics ours.)

It should be noted section (2) of RCW 46.61.520 was amended in 1983 by deleting the specific punishment section and imposing the same punishment as a class B felony, the same as the manslaughter statute.

mal limit. As Pyles pulled the steering wheel to the right to avoid a stop sign, the guard was killed by the automobile. The court held the prosecutor could not charge manslaughter because the negligent homicide statute, where applicable, preempts the manslaughter statute. The court stated:

> We believe that the negligent homicide statute, RCW 46.61.520, preempts the manslaughter statute, RCW 9.48.060, whenever there is substantial evidence that the victim's death occurred as a proximate result of the operation of any vehicle by any person (1) while under the influence of or affected by intoxicating liquor, narcotic drugs or dangerous drugs, or (2) in a negligent manner no matter what degree of negligence is involved.

And, at page 253 of *Pyles*:

> The thrust of this opinion is that if the facts of the case will support a charge of negligent homicide, the prosecutor must charge negligent homicide. The legislature intended to create two separate and mutually exclusive crimes. The Fourteenth Amendment does not allow the prosecutor, *at any time,* to make a choice between manslaughter and negligent homicide. *State v. Collins, supra; Olsen v. Delmore,* [48 Wn.2d 545, 295 P.2d 324 (1956)].

The question before us is the effect of the legislative amendments of 1975. The maximum prison terms for both crimes were equalized to not more than 10 years, but the fines remained different: not more than $20,000 for manslaughter, as compared to not more than $1,000 for negligent homicide.[3]

We look first to *State v. Forler,* 38 Wn.2d 39, 227 P.2d 727 (1951) in which the defendant was charged and convicted of negligent homicide. At that time, negligent homicide and manslaughter convictions required the same burden of proof and resulted in identical punishments. On appeal, the defendant argued the information was defective because it charged other crimes, including manslaughter, in addition to negligent homicide. The court agreed the information charged manslaughter but concluded the duplica-

---

[3]The court takes note that Mrs. Haley was not fined under the manslaughter statute.

tion did the defendant no harm as the facts necessary to prove negligent homicide were also the facts necessary to prove manslaughter and the penalty was the same for both crimes. The State's argument is similar to that in *Forler* because the degree of negligence required to convict is the same under both statutes, as is the punishment. Hence, it is the State's position Mrs. Haley was not harmed when charged with manslaughter.

■■ In *State v. Danforth,* 97 Wn.2d 255, 257–58, 643 P.2d 882 (1982), the court reviewed the principles of statutory construction:

> In *State v. Cann,* 92 Wn.2d 193, 197, 595 P.2d 912 (1979), we stated:
>> The rule is that where general and special laws are concurrent, the special law applies to the subject matter contemplated by it to the exclusion of the general.
>> As these cases hold, where a special statute punishes the same conduct which is punished under a general statute, the special statute applies and the accused can be charged only under that statute.

(Citations omitted.) *See also State v. Farrington,* 35 Wn. App. 799, 801, 669 P.2d 1275 (1983). Also, it is not relevant that the special statute may require additional elements not found in the general statute. *State v. Shriner,* 101 Wn.2d 576, 580, 681 P.2d 237 (1984). In the facts before us, both the negligent homicide (RCW 46.61.520) and the first degree manslaughter (RCW 9A.32.060) statutes are applicable. But because the negligent homicide statute requires the use of an automobile as the instrument of death, and a time limitation of 3 years within which the death must occur, it is the more specific statute, and preempts prosecutions under the general manslaughter statute.

Second, the negligent homicide statute recognizes a valid legislative distinction between the general manslaughter statute and the more specific negligent homicide, enacted originally in Laws of 1937, ch. 189, p. 835. The section on negligent homicide was included at the request of prosecutors who had experienced difficulty in obtaining convictions for manslaughter where death was caused by an automo-

bile. *State v. Partridge,* 47 Wn.2d 640, 642, 289 P.2d 702 (1955).

In *State v. Beel,* 32 Wn. App. 437, 441, 648 P.2d 443 (1982), our court noted:

> In *State v. Collins,* 55 Wn.2d 469, 348 P.2d 214 (1960), the court held that where the negligent homicide statute is applicable, it supersedes the manslaughter statute. Expanding this, *State v. Pyles,* 9 Wn. App. 246, 511 P.2d 1374 (1973), held that a prosecutor must charge negligent homicide in all cases where there is substantial evidence that death occurred as a proximate result of the operation of a motor vehicle . . .

We hold that the rules announced in *Collins* and *Pyles* are applicable today despite the legislative amendments, which merely equalized the nature of the crimes and their punishments. To grant the prosecutor unbridled discretion of choosing under which statute he is to charge is to emasculate the negligent homicide statute. "This result is an impermissible potential usurpation of the legislative function by prosecutors." *State v. Danforth, supra* at 259.

We conclude that where the facts support either a manslaughter or negligent homicide charge, it is the prosecutor's duty, where an automobile is involved, to charge the more specific negligent homicide.

Mrs. Haley raises other issues which we will address because they are likely to reoccur during the second trial. The first issue is whether the court erred by admitting evidence of Mrs. Haley's beneficial interest in Mr. Haley's life insurance policy. *State v. Crudup,* 11 Wn. App. 583, 591, 524 P.2d 479 (1974) addresses the issue succinctly:

> did the trial court err in allowing testimony that defendant was the beneficiary of life insurance on the life of decedent? We answer no. Generally, testimony about insurance policies on the life of a decedent are admissible in homicide cases. 1 C. Torcia, *Wharton's Criminal Evidence* § 176, at 329–31 (13th ed. 1972); Annot., 28 A.L.R.2d 857 (1953). In this state testimony of life insurance on the life of a decedent in a homicide case has been held admissible. *See State v. Leuch,* 198 Wash. 331, 88 P.2d 440 (1939).

A review of Annot., 28 A.L.R.2d 857 (1953) indicates the evidence of a life insurance policy is admissible to show motive or intent, where the defendant had prior knowledge of the existence of the policy. In *People v. Parra,* 35 Ill. App. 3d 240, 340 N.E.2d 636 (1975), the evidence was admissible to show motive only where defendant knew of the existence of the policy and his relationship to it. The prosecutor did not establish a sufficient basis for introduction of the testimony so the court did not allow the evidence.

In *People v. Bush,* 84 Cal. App. 3d 294, 148 Cal. Rptr. 430, 438 (1978), the wife was charged with murder of her husband, but after all the evidence was in the court granted her motion for acquittal on the charges of first and second degree murder. She was found guilty by a jury of involuntary manslaughter. On appeal, an issue arose as to the admissibility of evidence that she was a beneficiary of a life insurance policy on her husband. At trial, the wife had admitted she knew she had become a beneficiary 1 month before her husband's death and that on advice of counsel she had made a claim for the proceeds in order to pay his funeral expenses. Relying on *People v. Chapman,* 50 Cal. App. 3d 872, 880–81, 123 Cal. Rptr. 862 (1975), which held a court in a criminal case should exclude evidence which merely points to a possible ground of suspicion, the court stated in *Bush,* at 307

> Having in mind that the evidence in this case was such that the trial court ultimately granted a judgment of acquittal on the charges of first and second degree murder, thereby determining an absence of malice aforethought as a matter of law, we believe that the evidence of the insurance policy on Gary's life could only serve to confuse the jurors and encourage them to engage in improper speculation about a possible motive. We conclude that such evidence should have been ruled inadmissible under section 352 of the Evidence Code [prejudicial effect outweighs probative value] and that the trial court should have granted defendant's motion to strike that evidence.

(Footnote omitted.)

Here, in response to the prosecutor's question on cross examination regarding the insurance policy, Mrs. Haley answered she had no idea of the value of the policy. On redirect, Mrs. Haley admitted the existence of two policies—one for Mr. Haley's daughter and a mandatory policy required by Mr. Haley's employer, Alcoa. Mrs. Haley testified she did not know that despite the dissolution she was still the beneficiary on the second policy. In a pretrial motion, the court relied on *State v. Crudup, supra,* to reach its decision in allowing the testimony, although it indicated "The balancing test may be brought up at the time and the Court will consider an objection at the time." (presumably referring to ER 403 which allows the court in its discretion to exclude relevant evidence where the prejudicial effect outweighs the probative value).

The record indicates Mrs. Haley was not aware she was still a beneficiary on Mr. Haley's Alcoa policy so could not form any motive or intent to kill Mr. Haley for that reason. Based on those facts, we conclude evidence of that policy should have been excluded because the prejudicial effect would have far outweighed the probative value. However, if at retrial the court is convinced by additional evidence that the admission of evidence of that policy would be more probative than prejudicial, the court is free to exercise its discretion on that matter.

The next issue raised by Mrs. Haley is whether she was entitled to an instruction on "reasonableness" defined in light of the circumstances as they appeared to her at the time the incident occurred. Instruction 6 submitted to the jury contained the WPIC 10.03 definition of recklessness:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

The language contained in this instruction is statutory language found in RCW 9A.08.010(1)(c). "The court not only

may, but should, use the language of the statute, in instructing the jury, where the law governing the case is expressed in the statute." *State v. Hardwick,* 74 Wn.2d 828, 830, 447 P.2d 80 (1968), as cited in *State v. Smith,* 31 Wn. App. 226, 229, 640 P.2d 25 (1982).

The prosecutor was correct in arguing the defense failed to submit any self–defense instructions, and in fact, Mrs. Haley's attorney withdrew his proposed instructions on excusable and justifiable homicide. *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977) and *State v. Crigler,* 23 Wn. App. 716, 598 P.2d 739 (1979), cited by Mrs. Haley, were cases where self–defense was an issue. Justifiable homicide and self–defense are synonymous terms. *State v. Daley,* 29 Wn. App. 55, 58, 627 P.2d 554 (1981). The evidence here indicated that just prior to the incident, Mrs. Haley was able to leave the deceased and return to the restaurant and that when she did reenter her car, the deceased was not attacking her at the time she accelerated. We conclude there was no error in the instructions submitted to the jury.

The judgment of the Superior Court is reversed; the case is remanded for retrial on an information charging negligent homicide under RCW 46.61.520.

MUNSON, C.J., and GREEN, J., concur.