[No. 10839-9-II.   Division Two.   May 11, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. ISAAC COLE, *Appellant.*

94

ALEXANDER, C.J., dissents by separate opinion.

*John Henry Browne* and *Browne & Ressler,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

PETRICH, J.—Isaac Cole appeals from his conviction of second degree assault on his minor stepson and claims that the admission of evidence of an insurance policy on the son's life was unduly prejudicial. We agree and reverse.

On November 16, 1985, Cole's 2–year–old stepson David, and his 1–month–old daughter were in his care, while Mrs. Cole went to work. Sometime that day, David was admitted to the Burn Center at Harborview. He had sustained severe burns of his lower extremities and his buttocks and perineum. Defendant Cole was charged with second degree assault and was convicted after a jury trial.

Before trial, defense counsel made a motion in limine to exclude the testimony of Phillip Whittenberg, an insurance salesman, on the grounds of relevance. Whittenberg's testimony was intended to show that shortly before November 16, 1985, Cole applied for life insurance for his whole family. The State's theory was that Cole's taking out insurance

on the boy's life, coupled with his mother–in–law, Annie McNutt's statement that she heard Cole say "David had to go", tend to show a planned intent to "take the child out," and that burning was a step on that way. The court denied the defendant's motion in limine and stated: "It seems to me that this could very well be a relevant bit of evidence as to *motivation* for this assault." At trial, Whittenberg was allowed to testify over the defendant's timely objection.

In determining whether the testimony of the insurance salesman was admissible we first examine its relevance. Relevant evidence means evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. Relevant evidence is generally admissible. ER 402.

Here, the court found that the evidence was relevant to show motivation; we disagree. The existence of an insurance policy on the life of a victim by the very nature of the policy does not provide an inducement to assault the victim. While insurance on the life of the victim is relevant to establish a motive to commit a homicide, Cole was not charged with either homicide or attempted homicide. We do not see how the existence of the policy makes the assault more probable and we find that the evidence was inadmissible.

In *People v. Bush,* 84 Cal. App. 3d 294, 148 Cal. Rptr. 430 (1978), the wife was charged with murdering her husband. During the trial, evidence was introduced to show that the wife was aware that she was the beneficiary of an insurance policy on her husband's life. *Bush,* 148 Cal. Rptr. at 435. After all the evidence was in, the charges of first and second degree murder were dismissed because of the absence of malice aforethought and only the remaining charge of manslaughter was submitted to the jury. The defendant was found guilty of involuntary manslaughter. *Bush,* 148 Cal. Rptr. at 431–32. On appeal, the court found that, in light of the dismissal of the murder charges, the evidence of life insurance in relation to the remaining

charge of manslaughter was inadmissible. *Bush,* 148 Cal. Rptr. at 438. The evidence could only serve to confuse the jurors and encourage them to engage in improper speculation about possible motive. *People v. Bush, supra.*

Similarly, the evidence of an insurance policy on David's life has no relevance to the charge of assault. Furthermore, the effect of the evidence on the jurors is likely to be highly prejudicial, and allows for confusion and speculation.

■ Even where the existence of an insurance policy is relevant, as in showing the accused had a motive for killing in a homicide case, proof of the policy and its relationship to the accused must be shown. *People v. Mitchell,* 105 Ill. 2d 1, 473 N.E.2d 1270, 1274 (1984), *cert. denied,* 470 U.S. 1089 (1985). It is incumbent upon the State to establish or to at least make it a jury question whether the defendant knew the policy was in effect. *State v. Leuch,* 198 Wash. 331, 337, 88 P.2d 440 (1939). The admissibility must be predicated on evidence of the defendant's knowledge of the policy's existence, its validity, or believed validity, and that the defendant will benefit from it. *Mitchell,* 473 N.E.2d at 1274.

In *State v. Haley,* 39 Wn. App. 164, 692 P.2d 858 (1984), the wife was charged and convicted of first degree manslaughter. During an argument with her husband, she accelerated her car in reverse, crushing the husband between the car and a utility pole. Evidence was introduced to show the existence of an insurance policy on the husband's life. *Haley,* 39 Wn. App. at 169. On appeal, the court found that the evidence was inadmissible because the wife was not aware that she was still a beneficiary of the husband's policy. *Haley,* 39 Wn. App. at 171. Because there was no proof of the defendant's knowledge, the prejudicial effect of the evidence outweighed the probative value. *State v. Haley, supra.*

Similarly, in this case, the first payment on the insurance policy was not made until the end of November and the issue date was December 1. There is no evidence that the

defendant believed that the policy was effective at an earlier date, nor is there evidence that he was motivated by a thought of gain from the policy.

We conclude that the evidence was irrelevant in relation to the charge of assault and its admission was in error. The remaining question is whether the error was so prejudicial as to require reversal. This error is not of constitutional magnitude. Evidentiary errors not of constitutional magnitude are prejudicial only if, within reasonable probabilities, the outcome of the trial was affected by such evidence. *State v. Zwicker,* 105 Wn.2d 228, 243, 713 P.2d 1101 (1986); *State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

The State's theory, based essentially on circumstantial evidence, was that Cole deliberately placed David into the bathtub containing scalding water. According to Cole's testimony he sat David on the toilet, without any clothes on, and then proceeded to prepare a bath for him. Cole pulled the faucet out and, without checking the water, left the bathroom to tend to his crying 1–month–old daughter, before placing David in the tub. While he was changing the baby, he heard David scream in pain. He immediately stopped what he was doing, ran into the bathroom, and observed David in the water jumping up and down and splashing hot water. Cole thought that David apparently had climbed into the tub of scalding water. He immediately pulled David out of the tub. After realizing that David's ankles were swelling, Cole called for an ambulance and called his wife. Cole's wife arrived before the ambulance and they immediately transported David to Madigan hospital. Later that day, David was transferred to the Burn Center at Harborview.

In support of the State's case, Dr. Heimbach presented persuasive opinion evidence that David was deliberately immersed into the water. His opinion was based on the levels of the burned area on the child's legs and buttocks, the severity of the burn areas, and the lack of splash marks. In the doctors' opinion, the burn patterns were inconsistent

with burns one would expect had the child climbed into the tub. However, there was some documentary evidence presented to show that a pediatric resident found splash marks supportive of accidental injury. The resident doctor also stated in the report that both parents were appropriately concerned and that nonaccidental trauma was not felt to be in issue here.

Furthermore, there was conflicting testimony from two of David's babysitters. One testified that, while in her care, David did not appear to be afraid of water in the bathtub and that he was able to climb into the tub by himself. The other testified that David did not like water above his ankles and that he never got into the tub by himself.

Annie McNutt, David's maternal grandmother, testified that she had spent time with David prior to the incident. She observed that he was afraid of the water and would not climb in. However, there was evidence of animosity between defendant and his mother–in–law, which may have affected McNutt's credibility in the eyes of the jury.

In view of the conflict between the direct and circumstantial evidence, we conclude that there is a reasonable probability that the outcome of the trial would have been different had the error in introducing the evidence of insurance not occurred.

We reverse and remand for a new trial.

REED, J., concurs.

ALEXANDER, C.J. (dissenting)—Although I agree with the majority that the trial court erred in admitting evidence that Cole had insured the victim's life, I would not reverse. I reach this conclusion because, in my judgment, the error was harmless.

In reaching its conclusion that the evidence of insurance was not relevant, the majority stressed that there was no evidence that Cole believed that the policy on the child's life was in effect at the time of the alleged assault or that

he was motivated by a thought of gain on the policy. It follows that Cole was not prejudiced by the testimony about insurance. The jurors heard evidence from which they could reasonably conclude that the policy was not in effect at the time of the assault, and consequently, it would appear that the prejudicial effect of this evidence is as slight as its probative value.

The majority correctly observes that the error in admitting this evidence is of nonconstitutional magnitude. Error of nonconstitutional magnitude provides a basis for a reversal only if it can be said that within reasonable probabilities the outcome of the trial was affected by the inadmissible evidence. *State v. Zwicker,* 105 Wn.2d 228, 243, 713 P.2d 1101 (1986). In this fairly lengthy trial, where the principal focus was on the nature of the severe injuries experienced by David Cole, the evidence about insurance was relatively insignificant. In fact, it pales in comparison to the evidence about the child's burns. My review of the record reveals that the discussion of insurance consumed only five pages of the approximately 300–page trial transcript. The brief reference to insurance in the record, in my judgment, had no influence on the trial's outcome when it is viewed in the context of the State's strong case against Cole.

I would affirm.