[No. 78062-5.   En Banc.]
Argued September 21, 2006.     Decided November 30, 2006.

THE STATE OF WASHINGTON, *Petitioner*, v. QUENTIN ERVIN, *Respondent*.

*Norm Maleng, Prosecuting Attorney*, and *Andrea R. Vitalich, Deputy*, for petitioner.

*Howard L. Phillips*, for respondent.

¶1 BRIDGE, J. — The State seeks to retry Quentin Ervin on charges of aggravated first degree murder and attempted first degree murder. In 1994, the State charged

Ervin and his codefendant Eric Smiley with aggravated first degree murder, attempted first degree murder, and second degree felony murder for their involvement in the shooting death of a Seattle police officer. The jury was unable to agree on the first two charges for Ervin but found him guilty of felony murder. Ervin successfully vacated that conviction, based on *In re Personal Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002), and *In re Personal Restraint of Hinton*, 152 Wn.2d 853, 100 P.3d 801 (2004). He now argues that the State may not retry him on the greater charges, as doing so would violate double jeopardy prohibitions. We disagree and reverse the superior court's dismissal of those charges.

# I

## Facts and Procedural History

¶2 On July 7, 1994, the State charged Smiley and Ervin in the alternative with aggravated murder in the first degree (count I), attempted murder in the first degree (count II), and murder in the second degree (felony murder with assault as the predicate felony) (count III). The joint trial began on November 20, 1995, and lasted more than three months. Eighty-six witnesses testified.

¶3 At the conclusion of the trial, the court instructed the jury, inter alia, that

[w]hen completing the verdict forms, you will first consider the crime of Murder in the First Degree, as charged in Count I. If you unanimously agree on a verdict, you must fill in the blank provided in verdict form A the words "not guilty" or the word "guilty," according to the decision you[ ] reach. If you cannot agree a verdict, do not fill in the blank provided in Verdict Form A.

If you find the defendant guilty on verdict form A, do not use verdict forms B or C. If you find the defendant not guilty of the crime of Murder in the First Degree, or if after full and careful consideration of the evidence you cannot agree on that crime,

you will consider the alternative crime of Attempted Murder in the First Degree, as charged in Count II.

Clerk's Papers (CP) at 287. The instructions went on to direct the jury to follow the same procedures for counts II and III and verdict forms B and C,[1] respectively.

¶4 After five weeks of deliberations, the jury announced that it was unable to reach a unanimous verdict.[2] The court asked the jury to continue deliberating, which it did for two more days. At that point, the jury sent a message to the court, stating:

> "The jury has continued to deliberate according to the court's direction. We are still unable to reach a unanimous verdict on any of the three charges against Eric Smiley. Since our last inquiry to the court, there has been no movement toward a unanimous verdict on any of the counts."
>
> "We believe that additional deliberation would not result in a unanimous verdict on any of the three counts. We have stopped deliberations and asked for the court's direction."

Mot. for Discretionary Review, App. C at 3. The jury had reached a verdict as to Ervin. *See id.* at 10.

¶5 The State asked the court to direct the jury to continue deliberating. Smiley's attorney deferred to the court's discretion but pointed out that it might be coercive to ask the jury to continue deliberations. Ervin's attorney objected to any further delay in regard to his client and asked that the verdict in regard to Ervin be read.[3] The court decided to end deliberations and discharge the jury after reading the verdict for Ervin.

¶6 The jury did not fill in the blanks to indicate "guilty" or "not guilty" on Ervin's verdict forms A or B for counts I

---

[1] Form B was the verdict form for the charge of attempted first degree murder; form C was the verdict form for the charge of second degree felony murder.

[2] It is unclear from the record provided to this court whether the jury originally indicated that it was deadlocked in regard to both defendants, or defendant Smiley only.

[3] Contrary to the State's assertions otherwise, *see* Reply Br. of Pet'r at 14-15, 17, there is no evidence that Ervin "demanded" that the jury be dismissed.

and II; rather, someone put a slash mark through the forms and wrote "not used." CP at 118-19.[4] However, after finding Ervin "not guilty of [count I (aggravated first degree murder) or count II (attempted first degree murder)], or being unable to unanimously agree" as to those charges, the jury ultimately found Ervin guilty of count III, murder in the second degree (felony murder). *See* CP at 117-19. The court sentenced Ervin to an exceptional sentence of 328 months, citing his extensive juvenile record. The Court of Appeals affirmed Ervin's conviction, *State v. Ervin*, noted at 103 Wn. App. 1013, 2000 Wash. App. LEXIS 2111, and this court denied review, *State v. Ervin*, 143 Wn.2d 1014, 22 P.3d 802 (2001).

¶7 Following this court's decisions in *Andress*, 147 Wn.2d 602, and *Hinton*, 152 Wn.2d 853, Ervin filed a personal restraint petition (PRP) in the Court of Appeals, challenging his conviction for felony murder where assault was the predicate felony. The Court of Appeals granted his PRP on December 29, 2004, found *Andress* controlling, and vacated his conviction.

¶8 The State filed a motion for reconsideration in the Court of Appeals and a motion for discretionary review in this court on the issue of whether the State could charge Ervin with aggravated murder and attempted first degree murder on remand. Both courts determined that the trial court should decide the issue in the first instance.

¶9 Then, on October 11, 2005, the State charged Ervin with aggravated murder in the first degree (count I) and attempted murder in the first degree (count II). Ervin responded by filing a motion asking the court to dismiss the charges based upon double jeopardy principles and to enter a directed verdict against Ervin for second degree assault. The trial judge rejected Ervin's motion for a directed verdict. He also ruled that the State could not charge Ervin with aggravated first degree murder and attempted first degree murder but could charge him with intentional

---

[4] It is unclear whether this was done by a member of the jury or by an employee of the court.

second degree murder. On December 2, 2005, the State then filed a second amended information charging Ervin with murder in the second degree, and the court arraigned him on those charges. Although he denied the State's motion to stay the proceedings pending appellate review of the ruling, the trial judge recommended that the State seek discretionary review directly to this court. This court granted review on January 25, 2006.

II

Analysis

■■ ¶10 The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution prohibit the State from twice putting a person in jeopardy for the same offense. "The federal and state [double jeopardy] provisions afford the same protections and are 'identical in thought, substance, and purpose.'" *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 171, 12 P.3d 603 (2000) (quoting *State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959)). The double jeopardy clause applies where (1) jeopardy has previously attached, (2) that jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law. *See State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 820, 100 P.3d 291 (2004). Where these elements have been met, the double jeopardy clause bars the State from retrying a defendant. *See Corrado*, 81 Wn. App. at 645. In the instant case, only the second element is at issue. Thus, we must decide whether jeopardy has terminated on the charges of aggravated first degree murder and attempted first degree murder, thereby barring the State from retrying Ervin on these charges.

■■ ¶11 Jeopardy may be terminated in one of three ways: (1) when the defendant is acquitted, *Richardson v. United States*, 468 U.S. 317, 325, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984); *Corrado*, 81 Wn. App. at 646; (2) when the

defendant is convicted and that conviction is final, *see Corrado*, 81 Wn. App. at 647; and (3) when the court dismisses the jury without the defendant's consent and the dismissal is not in the interest of justice, *see Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957) ("[A] defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again."). A hung jury is an unforeseeable circumstance requiring dismissal of the jury in the interest of justice. *See Green*, 355 U.S. at 188; *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982) (finding that discharge has the same effect as acquittal " 'unless such discharge was necessary in the interest of the proper administration of public justice' " (emphasis omitted) (quoting *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962))).[5]

## 1. Acquittal as Terminating Jeopardy

■ ¶12 Acquittal terminates jeopardy. *Richardson*, 468 U.S. at 325. This court has held that if a jury considering multiple charges renders a verdict as to one of the charges but is *silent* on the other charge, such action constitutes an implied acquittal barring retrial on those charges. *See Schoel*, 54 Wn.2d at 394 (finding that where the jury returned a verdict of guilty for murder in the second degree but left the verdict form blank for murder in the first degree, the jury had implicitly acquitted the defendant of the greater offense); *State v. Davis*, 190 Wash. 164, 166-67, 67 P.2d 894 (1937) (finding that where the jury rendered a verdict on one count but was silent as to the other two, and the record did not show why the jury was discharged before rendering a verdict on those counts, such action was " 'equivalent to acquittal' " (quoting *Selvester v. United States*, 170 U.S. 262, 269, 18 S. Ct. 580, 42 L. Ed. 1029 (1898))); *see also Green*, 355 U.S. at 190-91 (finding implied acquittal of first

---

[5] Ervin does not contend that the jury was dismissed without his consent before reaching a verdict or that the discharge of the jury was not in the interest of justice. Rather, Ervin argues that the jury *had*, in fact, reached a verdict in regard to him. CP at 218. Thus, the discharge of the jury is not disputed.

degree murder where the jury returned a verdict of guilty on the second degree murder charge but was silent on the greater offense); *State v. Hescock*, 98 Wn. App. 600, 611, 989 P.2d 1251 (1999) (finding implied acquittal where the finder of fact was a judge who was silent as to the alternative means of committing the offense). Ervin argues that an implied acquittal on the greater charges occurred here. *See* Resp. Br. at 13.[6]

¶13 In *State v. Brown*, 127 Wn.2d 749, 903 P.2d 459 (1995), this court unanimously held that where a jury could not agree on the charge of rape in the first degree, but did convict on rape in the second degree, the State could not retry the defendant on the greater charge. *Id.* at 753-54, 756-57. This was true even though the defendant successfully vacated his conviction on the lesser charge. *See id.* at 757. Because the main issue in that case was whether it was proper for the court to instruct the jury on the lesser included offense, we did not extensively address the double jeopardy issues. We said merely that "[d]ue to double jeopardy concerns, the defendant cannot be retried on charges greater than the charge for which he was convicted." *Id.* at 756-57.

¶14 We have recently addressed this issue in greater detail. In *State v. Linton*, 156 Wn.2d 777, 132 P.3d 127 (2006), we considered whether the State could retry a defendant on a charge of first degree assault where the jury had been deadlocked as to that charge but returned a verdict of guilty of second degree assault. *Id.* at 779-80. *Linton* differed from prior cases addressing the issue in that at Linton's trial, the jurors indicated on the record that they were deadlocked 11-1 to convict on the greater charge; they

---

[6] Ervin further argues that RCW 10.43.050 prohibits retrial on a different degree of the same crime where a defendant has been acquitted or convicted of one degree. Resp. Br. at 20. Ervin cites Justice Chambers' concurrence in *State v. Linton*, 156 Wn.2d 777, 132 P.3d 127 (2006), to support this argument. Resp. Br. at 20 (citing *Linton*, 156 Wn.2d at 793 (Chambers, J., concurring)). However, as Justice Chambers himself noted, this court decided in *State v. Ahluwalia*, 143 Wn.2d 527, 22 P.3d 1254 (2001), that RCW 10.43.050 merely codifies the double jeopardy provisions and does not provide for a separate statutory analysis. *See Ahluwalia*, 143 Wn.2d at 541.

had used "unable to agree" jury instructions;[7] and the court inquired after the verdict into whether, given more time for deliberations, the jury would be able to agree on a verdict for the greater charge. *Id.* at 780-81 & n.1. Thus, it was clear from the record that the jurors were not "silent" on the greater charge, but rather had been unable to reach a unanimous decision. *See id.* at 780-81.

¶15 This court failed to offer a majority opinion in *Linton*. In the lead opinion, Justice Fairhurst and three other justices reasoned that by finding the defendant guilty of assault in the second degree, the jury had implicitly acquitted the defendant of the greater charge of assault in the first degree. *See id.* at 789. The lead opinion found that the trial court's inquiry regarding the jury deadlock was an impermissible inquiry into the jury's thought processes and that had the court not erred in making this inquiry, the jury would have been considered "silent" on the greater charge. *Id.* at 787-89. Thus, by finding "constructive silence" on the greater charge, the lead opinion found that the jury implicitly acquitted the defendant of that charge. *Id.* at 788-89. The lead opinion found that this implied acquittal acted to terminate jeopardy and prohibit the State from retrying Linton for assault in the first degree. *See id.*

¶16 The State argues that we should revisit the lead opinion in *Linton*. Reply Br. of Pet'r at 7. In the State's opening brief, filed before this court's opinion in *Linton* was released, the State argued that the implied acquittal doctrine should not apply here because the record clearly indicates that the jury was deadlocked—not silent—and subsequently dismissed at Ervin's request. Opening Br. of

---

[7] Washington courts have adopted "unable to agree" jury instructions, which allow jurors considering multiple charges to consider the lesser charges if they cannot agree on the greater ones. *State v. Labanowski*, 117 Wn.2d 405, 419, 816 P.2d 26 (1991). This is in contrast to jurisdictions that require "acquittal first" instructions, which require that the jury unanimously agree on acquittal on the greater charges before moving on to consider the defendant's guilt on the lesser charges. *Id.* at 418. The "unable to agree" instructions mandate that if after full and careful consideration of the evidence the jurors cannot agree as to guilt or innocence on a charge, they must leave the verdict form for that charge blank and consider the next charge. *Id.* at 419.

Pet'r at 18. The State argued that these characteristics distinguish the case from previous cases applying the implied acquittal doctrine, in which juries were silent on the greater charges and dismissed without explanation.[8] *See id.* In its reply brief, filed after *Linton*, the State argued that the lead opinion in *Linton* misapplied the "inheres in the verdict" analysis to conclude that the court improperly inquired into the jury's thought processes. Reply Br. of Pet'r at 8-9. The State points out that a court may discharge a genuinely deadlocked jury and that to determine whether a jury is genuinely deadlocked it may properly " 'make certain limited inquiries of the jury as to the progress of [the] deliberations.' " *Id.* at 10 (quoting *Jones*, 97 Wn.2d at 164). Therefore, the State argues, it was not improper for the court to inquire into the deadlock. *Id.* at 11.

¶17 The State is correct, as the concurrence in *Linton* pointed out and the lead opinion conceded, that the jury was not "silent" on the greater charge. *Linton*, 156 Wn.2d at 789 (Sanders, J., concurring); *see id.* at 788 (lead opinion). According to well-established case law, juries are presumed to follow the instructions provided. *See, e.g., State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). Here, as in *Linton*, the jury was instructed to leave the verdict forms blank if it was unable to agree on a verdict for each particular charge. CP at 287-88. The jury did just that on verdict forms A and B. CP at 118-19. Thus, we may logically conclude that the jury could not agree on a verdict for the

---

[8] The State also argues that the implied acquittal doctrine should not apply here because cases previously applying the doctrine employed it only where the jury convicted the defendant on a charge that was a *lesser included offense* of the greater charge, and here the charges are merely different degrees. *See* Mot. for Discretionary Review, App. I, at 12-14; Verbatim Tr. of Proceedings (VTP) (Dec. 2, 2005) at 9-11. The trial judge rejected this argument below, finding that there is no "honorable distinction" between lesser included offenses and lesser degree offenses in the implied acquittal situation. VTP at 15. The State cites to no case in which a court rejected the implied acquittal doctrine because the charges were not lesser and greater offenses. Rather, the rule this court first propounded in *Davis*, and which courts continue to cite today, *see, e.g., Linton*, 156 Wn.2d at 785, is that "where an indictment or information contains two or more counts and the jury either convicts or acquits upon one and is silent as to the other, and the record does not show the reason for the discharge of the jury, the accused cannot again be put upon trial as to those counts." *Davis*, 190 Wash. at 166. We have found no explicit requirement that these counts be greater or lesser included offenses.

crimes of aggravated murder in the first degree or attempted murder in the first degree. The instructions and verdict forms are a part of the record. Both the United States Supreme Court and this court have found that "where a jury ha[s] not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record," the implied acquittal doctrine does not apply. *Selvester*, 170 U.S. at 269; *see also Davis*, 190 Wash. at 166-67. Therefore, regardless of any inquiry by the trial court, the blank verdict forms indicate on their face that the jury was unable to agree.[9] Because the jurors were unable to agree, we cannot consider them to have acquitted Ervin of the greater charges.[10] Thus, Ervin has no acquittal operating to terminate jeopardy.

## 2. Conviction as Terminating Jeopardy

¶18 Conviction of the crime charged unequivocally terminates jeopardy. *See Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). However, a successful appeal that vacates the conviction for reasons other than insufficient evidence effectively continues the jeopardy.[11] *See Burks v. United States*, 437 U.S. 1, 18, 98 S.

---

[9] Because we hold that there was not an implied acquittal, we need not address the State's argument that equating a jury's inability to agree with an acquittal violates the Washington Constitution's requirement that jury verdicts be unanimous.

[10] This is not to decide, however, that the jury's inability to agree on the greater charges is the equivalent of a mistrial on those charges. Unable to agree instructions instruct the jury to end deliberations on a greater charge and move to a lesser charge once disagreement on the greater charge has been established. Comparatively, state and federal jurisprudence establishes that a jury must be "genuinely deadlocked" before a mistrial can be declared. *See Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978); *see also Jones*, 97 Wn.2d at 164 (finding that "hopeless deadlock is an 'extraordinary and striking' circumstance"). Therefore, an "unable to agree" verdict (or nonverdict) is not the equivalent of a "mistrial" on the charges upon which the jury was unable to agree.

[11] Ervin argues, without citing to any authority, that jeopardy terminated when he exhausted his right to direct appeal and that "filing a PRP years later" should not create an exception to double jeopardy protections. *See* Resp. Br. at 16, 20. Such a claim was expressly rejected in *United States v. Tateo*, 377 U.S. 463, 466, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964), where the United States Supreme Court stated that "[whether] a defendant's conviction is overturned on collateral rather than direct attack is irrelevant" for double jeopardy purposes.

Ct. 2141, 57 L. Ed. 2d 1 (1978) (holding that the double jeopardy clause bars retrial where a court has vacated a conviction due to insufficient evidence); *North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (finding that the double jeopardy clause "imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside").

¶19 In *Linton*, four members of this court found that where the jury had been unable to agree on the greater charge of assault in the first degree, but did render a guilty verdict on assault in the second degree, it was the *conviction* for the lesser offense—and not an implied acquittal of the greater—that acted to terminate jeopardy. *See Linton*, 156 Wn.2d at 789 (Sanders, J., concurring). The concurring justices found that

> where the jury is hung on the greater charge but convicts of the lesser included charge, *and the conviction of the lesser included charge is not overturned on appeal*, the conviction, once final, terminates jeopardy, and the defendant cannot be retried for the greater charge if it constitutes the same offense for double jeopardy purposes.

*Id.* at 792 (emphasis added). Thus, the concurring justices found that the State was precluded from retrying Linton for assault in the first degree because it constituted the same offense of which he had already been convicted. *See id.*

¶20 The instant case differs from *Linton* in that here, Ervin has successfully challenged his conviction for felony murder. CP at 141-42. Therefore, Ervin currently has no conviction terminating jeopardy. Applying the *Linton* concurrence's rationale, double jeopardy protections are not triggered because jeopardy is continuing. *See Corrado*, 81 Wn. App. at 647-48; *cf. Linton*, 156 Wn.2d at 792 (Sanders, J., concurring) (stating that where a conviction for a lesser included offense is not overturned on appeal, the defendant cannot be retried for the greater charge).

¶21 We adopt the *Linton* concurrence's rationale and find that because Ervin has successfully vacated his con-

viction, jeopardy has not terminated. Because we also find that the implied acquittal doctrine does not apply in this case, we hold that double jeopardy does not bar retrial on the greater charges.

## III

## Conclusion

¶22 We reverse the superior court and remand this case for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

Reconsideration denied February 13, 2007.