IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>JAMES DAVID GRIEPSMA, JR.,<br><br>               Appellant.<br><hr>In the Matter of the Postsentence Review of<br><br>JAMES DAVID GRIEPSMA, JR.,<br><br>               Respondent. | No. 79806-5-I<br>(consolidated w/80148-1-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — A jury found James Griepsma Jr. guilty of six counts of third degree assault and one count of third degree malicious mischief. Griepsma appeals, contending that the court allowed jurors with actual bias to sit on the jury, that the State failed to prove several of the assault charges, that the State was required to charge him under a more specific statute, and that the State failed to prove his criminal history. The Department of Corrections (DOC) filed a postsentence petition, alleging that the court erred by not ordering community custody. We conclude that the State properly charged and proved third degree assault and that Griepsma has failed to establish juror bias. Therefore, we affirm his convictions. However, we agree that the State failed to prove Griepsma's

Citations and pin cites are based on the Westlaw online version of the cited material.

criminal history and that the court was required to impose community custody, and we therefore remand for resentencing.

FACTS

In February 2018, after a bus driver asked Griepsma to get off a bus and Griepsma refused, Griepsma got into a conflict with Skagit Transit employees at a transit station in Mount Vernon. Police officers arrived, and in the subsequent interaction, Griepsma punched the officers, resulting in charges for assault and resisting arrest. While in the Skagit County Jail, Griepsma twice spit on a corrections officer and, in one incident, swung a door at one corrections officer and pushed a different officer's head to the floor, leading to a concussion. The State added several additional third degree assault charges for these incidents on the basis that Griepsma had assaulted "a law enforcement officer or other employee of a law enforcement agency." The State also charged Griepsma with two counts of second degree assault, one against an arresting officer and one against a corrections officer. Finally, the State dismissed the resisting arrest charge and added a charge for third degree malicious mischief.

At trial, Griepsma represented himself. The jury found him guilty of malicious mischief and all but one of the third degree assault charges. The jury left the verdict form blank for the other third degree assault charge and the two second degree assault charges. The court determined that there was a mistrial as to those three charges and dismissed them without prejudice.

At sentencing, the State alleged that Griepsma's sentencing score was 9+, and it recommended the maximum sentence of 60 months under the standard

range. The court ordered a midrange sentence of 55 months for each of the assault charges, to be served concurrently, and it did not order community custody. Griepsma appeals.

## ANALYSIS

Griepsma contends that biased jurors sat on the jury, that the State erroneously charged and failed to prove several counts of assault, and that the State failed to prove Griepsma's criminal history. DOC challenges the court's failure to impose community custody. Finally, Griepsma raises several additional issues in a statement of additional grounds for review (SAG).[1]

### Juror Bias

Griepsma first contends that the court allowed jurors with actual bias to serve on the jury and that therefore he is entitled to a new trial. We disagree.

An appellant may raise the issue of juror bias for the first time on appeal, and if a juror exhibited actual bias, the appellant is entitled to a new trial. State v. Irby, 187 Wn. App. 183, 192-93, 347 P.3d 1103 (2015). "The trial judge is in the best position to evaluate whether a particular potential juror is able to be fair and

---

[1] Griepsma also contends that the court erred by dismissing the second degree assault charges without prejudice instead of with prejudice. If "(1) the State charges a person with greater and lesser offenses and the jury is unable to agree regarding the greater offense but finds the defendant guilty of the lesser offense and (2) the defendant's conviction for the lesser offense is reversed on appeal," then recharging the greater offense does not violate double jeopardy. State v. Glasmann, 183 Wn.2d 117, 119, 349 P.3d 829 (2015). However, if the conviction for the lesser offense "'is not overturned on appeal, the conviction, once final, terminates jeopardy.'" State v. Ervin, 158 Wn.2d 746, 758, 147 P.3d 567 (2006) (emphasis omitted) (quoting State v. Linton, 156 Wn.2d 777, 792, 132 P.3d 127 (2006) (Sanders, J., concurring)). Because we affirm Griepsma's convictions for third degree assault, the second degree assault charges must be dismissed with prejudice on remand.

impartial based on observation of mannerisms, demeanor, and the like." State v. Gonzales, 111 Wn. App. 276, 278, 45 P.3d 205 (2002).  We review the court's failure to dismiss a biased juror for a manifest abuse of discretion.  Gonzales, 111 Wn. App. at 278.

Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."  RCW 4.44.170(2).  However, even if a juror appears to have formed an opinion, the court need not dismiss the juror unless the court is "satisfied, *from all the circumstances*, that the juror cannot disregard such opinion and try the issue impartially."  RCW 4.44.190 (emphasis added); State v. Lawler, 194 Wn. App. 275, 281, 374 P.3d 278 (2016).

Here, Griepsma challenges the seating of five jurors for the first time on appeal.  First, he claims jurors 32 and 34 said that they expected Griepsma to testify and "that they would hold his failure to testify against him."  This claim arises from the following interaction during voir dire:

> THE DEFENDANT:  . . . Will -- would anyone here be disappointed if the Defendant does not present any evidence or burden of proof?
> . . . .
> NUMBER 21:  Is he asking that since -- if the Defendant doesn't say anything, that we won't hold that against him?  Is that the question?
> THE DEFENDANT:  Yes, ma'am.
> NUMBER 21:  Thank you.
> THE DEFENDANT:  Does anyone expect me to testify?

Jurors 32 and 34, who were ultimately selected for the jury, raised their hands to this last question.  This exchange is significantly more ambiguous than

Griepsma contends. Griepsma's questioning was somewhat confusing, so it is unclear from the context whether the jurors were saying that they would hold a failure to testify against him or simply whether they expected him to testify. Because the court is in the best position to determine whether a juror is biased, we defer to the court's assessment of which question the jurors were responding to and defer to its decision to place jurors 32 and 34 on the jury. Gonzales, 111 Wn. App. at 278.

Griepsma next challenges jurors 13, 22, and 30 on the basis that they were biased toward law enforcement. These jurors answered yes to the question: "[W]ould anybody give more weight to . . . a police officer's testimony just because they were a police officer." They were not asked follow-up questions.

"A prospective juror's expression of preference in favor of police testimony does not, standing alone, conclusively demonstrate bias." Gonzales, 111 Wn. App. at 281. However, if this stated preference rises to a preconceived opinion or belief about the issues, then actual bias is established. See Gonzales, 111 Wn. App. at 281 (juror's statement that she would have a "'very difficult'" time disbelieving a police officer and was not certain she could apply the presumption of innocence was clear indicator of actual bias); Irby, 187 Wn. App. at 196 (a juror who said she was "predisposed to believe" police officers but would try to decide the case fairly did not demonstrate actual bias, but a juror who said she "'would like to say he's guilty'" because of her predisposition in favor of the State did demonstrate actual bias.). Here, the jurors' answers express a mere

preference in favor of police testimony.  Therefore, Griepsma has not established actual bias on the part of these jurors.

Furthermore, the entire context of voir dire supports a determination that these jurors could be impartial.  Juror 13 stated, "I don't feel I could have any problem with being biased in this case."  Juror 30 indicated that their brother-in-law was in law enforcement but that they could decide "based upon the evidence [they heard] and the law, not outside influences."  Finally, although juror 22 indicated they would give greater weight to a police officer's testimony, they also indicated that they had had a negative experience with law enforcement that led them to believe that police officers "sometimes . . . take their duties a little above and beyond."  Accordingly, we conclude that the trial court did not abuse its discretion when it allowed these jurors to sit on the jury.[2]

<u>Sufficiency of the Evidence for Third Degree Assault</u>

Griepsma contends that the prosecution failed to prove every element of third degree assault under RCW 9A.36.031(1)(g) as charged in counts 5, 6, 8, and 9.  Specifically, Griepsma contends that the State failed to prove that the victims in these incidents qualified as law enforcement officers or other employees of a law enforcement agency.  Because the record establishes that

---

[2] Griepsma disagrees that these statements support a finding of juror impartiality, contending that the trial court was required to rehabilitate the jurors by inquiring into their ability to be neutral *after* they expressed their preference for police testimony.  While we have noted that expressions of bias can be "neutralized by further questioning," rehabilitation was not required here because the jurors did not in fact demonstrate actual bias.  <u>Gonzales</u>, 111 Wn. App. at 282.  Furthermore, even if they had, the law is clear that in judging juror impartiality, the court has broad discretion to consider *all* the circumstances. <u>Irby</u>, 187 Wn. App. at 193.

the victims in these incidents were all corrections officers employed by the Skagit County Sheriff's Office, we disagree.

In order to "'ensure that the defendant's due process right in the trial court was properly observed,'" we review the record to ensure the State provided sufficient evidence to support a conviction. State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014) (quoting State v. Phuong, 174 Wn. App. 494, 502, 299 P.3d 37 (2013)). In doing so, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). We review issues of statutory interpretation, such as the elements of a crime, de novo. State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). If the plain language of the statute is "unambiguous, meaning it is subject to only one reasonable interpretation, our inquiry ends." State v. K.L.B., 180 Wn.2d 735, 739, 328 P.3d 886 (2014).

Here, the plain language of the statute is clear. RCW 9A.36.031(1)(g) defines third degree assault to include assault against "a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." "[L]aw enforcement" means "the department of people who enforce laws, investigate crimes, and make arrests." MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/law%20enforcement (last visited May 14, 2021); see also In re Det. of J.N., 200 Wn. App. 279, 286, 402 P.3d 380 (2017) ("Where the

7

legislature has not defined a term, we may look to dictionary definitions, as well as the statute's context, to determine the plain meaning of the term."). A sheriff's office is a law enforcement agency. See RCW 36.28.010(1) (county sheriff "[s]hall arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses"); Yakima County Deputy Sheriff's Ass'n v. Bd. of Comm'rs for Yakima County, 111 Wn.2d 854, 856-57, 765 P.2d 1297 (1989) (citing a different statutory definition of "law enforcement officer" as including county and deputy sheriffs); State v. Ramos, 149 Wn. App. 266, 271, 202 P.3d 383 (2009) (describing county sheriff's actions as authorized by a statute delegating power to "law enforcement agencies"). Therefore, although corrections officers who are employed by a sheriff's office may not be "law enforcement officer[s]," they are nonetheless "employee[s] of a law enforcement agency." RCW 9A.36.031(1)(g).

The State established that the victims in counts 5, 6, 8, and 9 were employed by the Skagit County Sheriff's Office. Accordingly, they fall into the class of victims described by RCW 9A.36.031(1)(g). We therefore conclude that there is sufficient evidence to support these convictions.

Griepsma disagrees and contends that we should read the statute narrowly to exclude corrections officers because to do otherwise would "render the custodial assault statute largely redundant or superfluous." While it is true that we do not "interpret a statute in any way that renders any portion meaningless or superfluous," Jongeward v. BNSF R. Co., 174 Wn.2d 586, 601, 278 P.3d 157 (2012), the plain reading of the third degree assault statute does

not render the custodial assault statute meaningless or superfluous. The custodial assault statute punishes the assault of a "staff member or volunteer, any educational personnel, any personal service provider, or any vendor or agent thereof" at any corrections institution. RCW 9A.36.100(1). This list includes many individuals who are not covered by the third degree assault statute, including volunteers as well as corrections staff members who are employed by entities other than law enforcement agencies. Therefore, Griepsma's contention fails.

### Failure To Charge Griepsma with Custodial Assault

Griepsma next contends that for assault against corrections officers, the State was required to charge him with custodial assault instead of third degree assault. He contends that the custodial assault statute is a special statute punishing the same conduct as RCW 9A.36.031(1)(g) and that therefore the general/special rule of statutory construction applies. We disagree.

The general/special rule of construction provides that "'where a special statute punishes the same conduct which is punished under a general statute, the special statute applies and the accused can be charged only under that statute.'" State v. Shriner, 101 Wn.2d 576, 580, 681 P.2d 237 (1984) (quoting State v. Cann, 92 Wn.2d 193, 197, 595 P.2d 912 (1979)). This rule only applies where the statutes are concurrent, which means that "the general statute will be violated in each instance where the special statute has been violated." Shriner, 101 Wn.2d at 580.

The general/special rule does not apply here because the statutes are not

9

concurrent. As noted above, the custodial assault statute punishes the assault of a "staff member or volunteer, any educational personnel, any personal service provider, or any vendor or agent thereof" at any corrections institution. RCW 9A.36.100(1). By contrast, the third degree assault provision at issue here punishes assault against "a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." RCW 9A.36.031(1)(g). Griepsma's argument fails because the third degree assault statute will not be violated each time the custodial assault statute is violated. For instance, assault against any volunteer, vendor, service provider, or staff member of a corrections institution who is not employed by a law enforcement agency would not trigger the third degree assault provision. Therefore, the statutes are not concurrent and the general/special rule does not apply.[3]

Griepsma disagrees and contends that the court should address whether the statutes overlap in the specific facts at issue here, rather than whether the statutes are concurrent under any set of facts. But this is not the test. Griepsma's reliance on our decision in State v. Haley, 39 Wn. App. 164, 692 P.2d 858 (1984), is misplaced. There, we stated that "where the facts support

---

[3] This conclusion is consistent with our decision in State v. Lavery, No. 50196-1-II, slip op. at 4 (Wash. Ct. App. July 31, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050196-1-II%20Unpublished%20Opinion.pdf ("[C]ustodial assault and assault in the third degree are not concurrent."). We also explained in that case that because the two statutes set equivalent punishments, the choice to charge one or the other does not implicate equal protection concerns. Lavery, No. 50196-1-II, slip op. at 4. Griepsma does not raise equal protection concerns here, so we do not address this issue.

either a manslaughter or negligent homicide charge, it is the prosecutor's duty . . . to charge the more specific negligent homicide." Haley, 39 Wn. App. at 169. This language does not imply that statutes can be concurrent solely based on the facts in one specific scenario but instead acknowledges that facts will not always support a charge under the more specific statute even where they support a more general charge. The law is clear that the test for whether statutes are concurrent is whether "the general statute will be violated in *each instance* where the special statute has been violated." Shriner, 101 Wn.2d at 580 (emphasis added).

Because the general/special rule does not apply, we affirm Griepsma's third degree assault convictions.

### Calculation of Offender Score for Sentencing

Griepsma next contends that the State failed to prove his criminal history by a preponderance of the evidence and that therefore we should remand for resentencing. He points to the State's failure to produce a judgment and sentence for an alleged 1994 burglary and the State's production of only an uncertified judgment and sentence for four prior offenses in 2017. We agree that the State failed to prove that the 1994 burglary should be included in Griepsma's offender score and therefore remand for resentencing.

We review a sentencing court's calculation of an offender score de novo. State v. Moeurn, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010). However, the existence of a prior conviction is a question of fact, which we review for substantial evidence. In re Pers. Restraint of Adolph, 170 Wn.2d 556, 566, 243

P.3d 540 (2010); Interstate Prod. Credit Ass'n v. MacHugh, 90 Wn. App. 650, 654, 953 P.2d 812 (1998).

At sentencing, the State has the burden to prove prior convictions by a preponderance of the evidence. Adolph, 170 Wn.2d at 566. This includes proving any misdemeanor convictions that prevent other convictions from washing out. State v. Cross, 156 Wn. App. 568, 586-87, 234 P.3d 288 (2010), modified on remand, 166 Wn. App. 320, 271 P.3d 264 (2012). The rules of evidence do not apply to a sentencing hearing. State v. Strauss, 119 Wn.2d 401, 418, 832 P.2d 78 (1992); ER 1101(c)(3). "'The best evidence of a prior conviction is a certified copy of the judgment.'" Adolph, 170 Wn.2d at 566 (quoting State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)). However, the State's burden "may be satisfied by evidence that bears some 'minimum indicia of reliability'" including "'other comparable documents of record or transcripts of prior proceedings.'" Adolph, 170 Wn.2d at 568-69 (quoting Ford, 137 Wn.2d at 480-81). "[A] certified copy of the judgment is not required to prove the existence of a conviction." Adolph, 170 Wn.2d at 568. For instance, our Supreme Court has held that the State established criminal history through a Department of Licensing driving record abstract and a Judicial Information System printout. Adolph, 170 Wn.2d at 569-70. Additionally, we have noted in the context of proving out-of-state criminal history that where the State provided minute orders, guilty pleas, charging documents, and an abstract of judgment, it was immaterial whether the documents were certified. State v. Winings, 126 Wn. App. 75, 92, 107 P.3d 141 (2005).

We first conclude that substantial evidence supports the trial court's finding that Griepsma's criminal history included the four 2017 convictions. Although the judgment and sentence presented by the State is not certified, it exhibits at least "minimum indicia of reliability." Ford, 137 Wn.2d at 481. The judgment and sentence bears the stamp of the superior court clerk and lists identifying information for Griepsma, including his date of birth and ID numbers. Furthermore, because it is from Skagit County, and not an out-of-state judgment, the Skagit County Superior Court was well positioned to assess its reliability. Accordingly, we decline to substitute our judgment for the trial court's and conclude that substantial evidence supports the court's findings with respect to these charges.

Next, we accept the State's concession that it failed to establish the 1994 burglary. The State's only evidence supporting the burglary charge was the 2017 judgment and sentence, which listed the burglary in Griepsma's criminal history. Even if this were sufficient evidence of the burglary itself, the 1994 burglary would wash out under RCW 9.94A.525(2)(b) unless Griepsma committed a crime in the interim. Because the State provided no evidence of any intervening crime, we conclude that the court erred by including this charge in Griepsma's criminal history. See Cross, 156 Wn. App. at 586-87 (stating that the State can meet its burden to show a felony did not wash out with evidence of intervening misdemeanors).

Finally, we cannot conclude that the inclusion of the burglary in Griepsma's criminal history was harmless error. "When the sentencing court

incorrectly calculates the standard range . . . remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). In this case, Griepsma's offender score was listed as "9+," based on the State's calculation of his score as 10. Without the burglary conviction, Griepsma's offender score is 9, resulting in the same sentencing range. The State recommended the high end of the sentence range, 60 months, and the court ordered a midrange sentence of 55 months. Some cases have held that when the sentencing range remains the same after recalculation of the offender score, the calculation error is harmless. State v. Priest, 147 Wn. App. 662, 673, 196 P.3d 763 (2008). However, elsewhere, we have held that the error is not harmless, even if the sentencing range is the same, because the "record does not clearly indicate that the sentencing court would have imposed the same sentence" without the erroneous offender score. State v. McCorkle, 88 Wn. App. 485, 499-500, 945 P.2d 736 (1997), aff'd, 137 Wn.2d 490, 973 P.2d 461 (1999). Because we cannot discern from the record that the court would have imposed the same sentence given Griepsma's correct offender score, we remand for resentencing.

Imposition of Community Custody

DOC in its postsentence petition asserts that the court erred by not ordering community custody. We agree.

As an initial matter, Griepsma asserts that DOC lacks standing to bring this petition because it failed to make reasonable efforts to resolve the issue

below. RCW 9.94A.585(7) permits DOC to "petition for a review of a sentence committing an offender to the custody or jurisdiction" of DOC. The petition must be filed within 90 days of DOC knowing the terms of the sentence and must "include a certification by [DOC] that all reasonable efforts to resolve the dispute at the superior court level have been exhausted." RCW 9.94A.585(7). If DOC fails to make these reasonable efforts at the trial court level, it will not have standing to file its petition. In re Sentence of Hilborn, 63 Wn. App. 102, 106-07, 816 P.2d 1247 (1991). While DOC does not need to formally file a motion, it must at least inform the court of the perceived errors. In re Sentence of Chatman, 59 Wn. App. 258, 264, 796 P.2d 755 (1990). For instance, in Hilborn, DOC mailed a letter to inform the court that the law did not authorize a defendant's sentence and then filed its postsentence petition four days later. Hilborn, 63 Wn. App. at 103-04. Because "the trial court was simply not given a fair opportunity to analyze DOC's concerns about the sentence, or to make any appropriate corrections," we held that DOC had not made reasonable efforts and therefore did not have standing to file the petition. Hilborn, 63 Wn. App. at 105-07.

In this case, DOC e-mailed the prosecutor to inform him of the sentencing error on April 10, 2019. The prosecutor replied, agreeing that community custody had not been imposed, but did not agree to seek an amendment of the error. DOC then e-mailed the prosecutor as well as the trial court on June 7, stating that if the sentence was not amended, DOC would file a postsentence petition. The prosecutor again replied but did not indicate that he would seek to

15

amend the sentence, and the court apparently did not reply. DOC filed its petition on July 3, 2019. Because DOC gave the State and the court notice and sufficient time to reply, we hold that DOC made reasonable efforts and accordingly has standing to file its petition.

As to the merits, DOC contends that the court erred by failing to impose a community custody term on Griepsma. We review the sentence for errors of law. RCW 9.94A.585(7). RCW 9.94A.701(3)(a) requires the court to sentence the defendant "to community custody for one year when the court sentences the person to the custody of" DOC for committing a crime against persons. Third degree assault is a crime against persons, meaning this community custody requirement applies to Griepsma. Former RCW 9.94A.411(2)(a) (2017). However, the "term of community custody . . . shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum." RCW 9.94A.701(9).

Griepsma was sentenced to 55 months but had a maximum sentence of 60 months. Therefore, under RCW 9.94A.701(9) the court could only sentence Griepsma to a combined 60 months of incarceration and community custody. Accordingly, we "remand to the trial court to either amend the community custody term or resentence" the defendant in accordance with RCW 9.94A.701(9). State v. Boyd, 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

Statement of Additional Grounds for Review

In his SAG, Griepsma raises several additional issues. None have merit.

A defendant may file a SAG "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). "[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Furthermore, we are "not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review." RAP 10.10(c).

Griepsma contends that he was denied effective access to discovery and legal research while incarcerated. He also claims that he was denied effective assistance of counsel by his standby counsel and denied confidentiality with his investigator. He raised these issues before the trial court, who concluded that he had meaningful access to legal resources. Griepsma fails to inform the court of the error in the court's decision on these issues. RAP 10.10(c); see also State v. Blockman, 198 Wn. App. 34, 43, 392 P.3d 1094 (2017) ("The record reveals that the trial court already addressed [the issues raised in the SAG] at length. Blockman gives us no reason to revisit the trial court's resolution of these issues."), aff'd, 190 Wn.2d 651, 416 P.3d 1194 (2018). Furthermore, the record indicates that Griepsma had his standby counsel dismissed and does not establish that Griepsma's communications with his investigator would be subject to attorney-client privilege. See Morgan v. City of Federal Way, 166 Wn.2d 747, 755, 213 P.3d 596 (2009) (evidence did not support contention that investigator's report was protected by attorney-client privilege because investigator was not

hired to provide legal advice).[4]

We affirm Griepsma's convictions but remand for resentencing with a recalculated offender score and to impose community custody in accordance with RCW 9.94A.701.

WE CONCUR:

Andrus, A.C.J.

---

[4] Griepsma raises several other issues that he argued below and the court addressed, such as the denial of a motion to dismiss, prosecutorial retaliation, potential juror prejudice, and the denial of a fair trial. Griepsma does not point to any errors which would give us "reason to revisit the trial court's resolution of these issues." State v. Blockman, 198 Wn. App. at 43. Griepsma also raises issues which do not affect the validity of his convictions or sentence, such as wrongful imprisonment and judicial misconduct in allowing him to be transferred to a prison, but which could perhaps be raised in a personal restraint petition.